Points Decided.

(September 11, 1915.)

## In re Application of ED CRANE for Writ of Habeas Corpus.

[151 Pac. 1006.]

CONSTITUTIONALITY OF ACT PROHIBITING SALE, MANUFACTURE, TRANS-
PORTATION OR POSSESSION OF INTOXICATING LIQUORS IN PROHIBITION
DISTRICT—PROHIBITION DISTRICT DEFINED—POLICE POWER—SUFFI-
CIENCY OF TITLE—LEGISLATION GENERAL AND NOT SPECIAL OR LOCAL
—USE OF ALCOHOL FOR SCIENTIFIC PURPOSES DEFINED.

1. Chapter 11, Session Laws 1915, providing, among other things,
that it shall be unlawful for any person, firm, company or corpora-
tion, its officers or agents, to sell, manufacture or dispose of any
intoxicating liquor or alcohol of any kind within a prohibition dis-
trict, or to have in his or its possession, or to transport, any in-
toxicating liquor or alcohol within a prohibition district, unless the
same shall have been procured and is so possessed and transported
under a permit as in said act provided, is not in contravention of
section 1 of the fourteenth amendment to the constitution of the
United States, nor of section 13, article 1 of the constitution of
Idaho. It was passed by the legislature with a view to the pro-
tection of the public health, public morals and public safety, and
has a real and substantial relation to those objects; and is, there-
fore, a reasonable exercise of the police power of the state.

2. The object of the title of an act is to give a general state-
ment of the subject matter, and such a general statement will
be sufficient to include all provisions of the act having a reasonable
connection with the subject matter mentioned and a reasonable
tendency to accomplish its purpose. It is sufficient if the act treats
of but one general subject and that subject is expressed in the title.

3. *Held*, that chapter 11, Session Laws 1915, is not in conflict
with article 3, section 16 of the constitution, and is not, therefore,
unconstitutional or void.

4. Said chapter is of general application to every county in the
state alike; and with the electors of the respective counties or
their boards of county commissioners, or municipal authorities of
any incorporated city or village, ·is left the decision to accept or
reject its terms and conditions. It is, therefore, neither a local
nor a special act, but a general law, and not in conflict with section
19, article 3 of the constitution.

5. The chapter expressly provides for the purchase and posses-
sion of pure alcohol to be used for scientific purposes. *Held*,

that the practice of medicine, surgery, dentistry and dental surgery are sciences, and that pure alcohol may be lawfully procured under the terms of the law in question in the manner provided therein for use in the practice of these professions or for any other scientific purposes.

6. A prohibition district within the meaning of chapter 11, Session Laws 1915, is any county or incorporated city or village wherein the manufacture, sale, possession, keeping for sale, transportation for sale or gift of intoxicating liquors for beverage purposes is declared unlawful, whether such prohibition district be established by constitutional amendment, legislative enactment, adoption of the provisions of the local option law, or by refusal of municipal authorities or county commissioners to grant saloon licenses.

7. *Held,* that the provisions of the chapter are effective in all such prohibition districts within the state, whether created before or after its adoption.

Application for writ of *habeas corpus.* Writ quashed.

A. H. Oversmith and J. H. Forney, for Petitioner.

It has been held by all the courts of last resort in the United States, passing upon statutes similar to the one under discussion, that such statutes, prohibiting the mere possession of intoxicating liquor for one's own use, are not a legitimate exercise of the police power, in that such possession is not inherently injurious to the health, morals or safety of the public, and that the enactment of such statutes is an attempt at the abridgment of the privileges and immunities of the citizen, without legal justification, is confiscation of property without due process of law, and that such statutes are void. (*Commonwealth v. Campbell,* 133 Ky. 50, 117 S. W. 383, 19 Ann. Cas. 159, 24 L. R. A., N. S., 172; *Eidge v. Bessemer,* 164 Ala. 599, 51 So. 246, 26 L. R. A., N. S., 394; *French v. Birmingham,* 165 Ala. 669, 51 So. 254; *Sullivan v. Oneida,* 61 Ill. 242; *State v. McIntyre,* 139 N. C. 599, 52 S. E. 63; *State v. Williams,* 146 N. C. 618, 61 S. E. 61, 14 Ann. Cas. 562, 17 L. R. A., N. S., 299; *State v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; Cooley on Constitutional Lim. 549; Black on Intoxicating Liquors, p. 50, sec. 38.)

There is a limit to the police power which the court must, when called upon in a judicial proceeding, ascertain and declare. (*State v. Redmon,* 134 Wis. 89, 126 Am. St. 1003, 114 N. W. 137, 15 Ann. Cas. 408, 14 L. R. A., N. S., 229; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205.)

F. L. Moore, Pros. Atty., for State.

Chapter 11 of the Idaho Session Laws of 1915 does not violate sec. 1 of the fourteenth amendment to the constitution of the U. S. (*Foster v. State of Kansas,* 112 U. S. 201, 205, 5 Sup. Ct. 8, 97, 28 L. ed. 629, and notes; *License Cases, Thurlow v. Massachusetts,* 5 How. (U. S.) 504, 12 L. ed. 256; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205; *Purity Extract & Tonic Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, 57 L. ed. 184; Webb-Kenyon Act, Fed. Stat. Ann. Sup. 1914, p. 208.)

The possession of property may be made a crime by the state legislature. (*Luck v. Sears,* 29 Or. 421, 54 Am. St. 804, 44 Pac. 693, 32 L. R. A. 738, and cases cited; *People of New York ex rel. Silz v. Hesterberg,* 211 U. S. 31, 29 Sup. Ct. 10, 53 L. ed. 75; *Magner v. People,* 97 Ill. 320; *Purity Extract & Tonic Co. v. Lynch, supra; Rosenthal v. People,* 226 U. S. 260, Ann. Cas. 1914B, 71, 33 Sup. Ct. 27, 57 L. ed. 212; *State v. Lewis,* 134 Ind. 250, 33 N. E. 1024, 20 L. R. A. 52; *State v. Randolph,* 1 Mo. App. 15; *Phelps v. Racey,* 60 N. Y. 10, 19 Am. Rep. 140; *State v. Kenney* (Wash.), 145 Pac. 450; *Ah Lim v. Territory,* 1 Wash. 156, 24 Pac. 588, 9 L. R. A. 395.)

H. H. Taylor, *Amicus Curiae.*

With regard to the right of the legislature to impose further prohibitions upon territory that has become dry by a vote of the people, see *Atkinson v. Southern Express Co.,* 94 S. C. 444, 78 S. E. 516, 48 L. R. A., N. S., 349.

The argument as to harrowing instances of the possibility of this act is met by the language of *Ex parte McClain,* 134 Cal. 110, 86 Am. St. 243, 66 Pac. 69, 54 L. R. A. 779.

The legislature may provide against the use of liquor as a beverage except on the prescription of a duly qualified physician. (*State v. Osmers,* 21 Ida. 18, at 27, 120 Pac. 165.) It may prohibit the manufacture for personal use. (*Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205.)

This act does not constitute class legislation; local option laws have been almost universally upheld, and such regulation does not constitute class or special legislation. (Vol. 1 Woolen & Thornton, sec. 155.)

The Kentucky constitution takes the case of *Commonwealth v. Campbell,* 133 Ky. 50, 117 S. W. 383, 19 Ann. Cas. 159, 24 L. R. A., N. S., 172, and other Kentucky cases, out of consideration in this case.

J. H. Peterson, Atty. Genl., E. G. Davis, Herbert Wing and T. C. Coffin, Assts., *Amici Curiae.*

The legislature, under the police power, has authority to punish the "guilty" possession of intoxicating liquors, meaning by "guilty" a possession for the purpose of violating the law; and if the possession is "innocent," meaning by "innocent" a possession such as is not contrary to the best interests of the public, and affects no one but the person having such possession, the legislature would have no authority whatever, under its police power, to interfere and make such possession a crime. (*Rupard v. State,* 7 Okl. Cr. 201, 122 Pac. 1108; *Southern Express Co. v. City of High Point,* 167 N. C. 103, 83 S. E. 254; *State v. Southern Express Co.* (N. C.), 83 S. E. 751; *Ex parte Hopkins* (Tex. Cr.), 171 S. W. 1163; *State v. Pope,* 79 S. C. 87, 60 S. E. 234; *Hunt v. State,* 5 Okl. Cr. 257, 114 Pac. 341; *Maynes v. State,* 6 Okl. Cr. 487, 119 Pac. 644; *Ex parte Peede* (Tex. Cr.), 170 S. W. 749; *Longmire v. State* (Tex. Cr.), 171 S. W. 1165; *Adams Express Co. v. Commonwealth,* 154 Ky. 462, 157 S. W. 908, 48 L. R. A., N. S., 342.)

If the court should see fit to construe the 1915 enactment as making only the "guilty" possession of intoxicating liquor unlawful, and as placing the burden upon the de-

fendant in all cases to show the innocence of his possession—
in other words, that he has the liquor for a purpose which
is protected under his constitutional guaranty—we believe
that such a decision would find support in the universally
accepted rule of evidence, stated by Jones on Evidence, 2d
ed., sec. 181; *Caffee v. State* (Okl. Cr.), 148 Pac. 680; *Sellers
v. State* (Okl. Cr.), 149 Pac. 1071.

The police power of a state does not extend to the depriva-
tion of a citizen of the right to have intoxicating liquors in
his possession for his own use. (*Town of Selma v. Brewer*,
9 Cal. App. 70, 98 Pac. 61; *Sullivan v. City of Oneida*, 61
Ill. 242; *City of Christopher v. Massotti*, 173 Ill. App. 241;
*State v. Denton*, 164 N. C. 530, 80 S. E. 401; *State v. Lee*,
164 N. C. 533, 80 S. E. 405; *Huffman v. State*, 6 Okl. Cr.
476, 119 Pac. 644; *Bird v. State* (Tenn.), 175 S. W. 554; *Ex
parte Brown*, 38 Tex. Cr. 295, 70 Am. St. 743, 42 S. W. 554;
*State of West Virginia v. Adams Express Co.*, 219 Fed. 794.)

The title specifically limits the keeping or possession of
liquor to the keeping for sale. The body of the act is broader
than the title in this, that it prohibits the keeping for any
purpose. If, however, the terms of the act in their construc-
tion are limited to a possession for an unlawful purpose, to
wit, a possession for sale, then the body of the act is recon-
cilable with the impression gained from a reading of the
title. (*Bird v. State* (Tenn.), 175 S. W. 554.)

H. S. Kessler, *Amicus Curiae*.

It is clearly within the province of the legislature to place
upon the defendant in a criminal action the burden of prov-
ing his lawful possession of intoxicating liquors. (*State v.
Adams*, 22 Ida. 485, 126 Pac. 401; *State v. Barrett*, 138 N. C.
630, 50 S. E. 506, 1 L. R. A., N. S., 626; *Caffee v. State*
(Okl. Cr.), 148 Pac. 680.)

The prohibition of possession of intoxicating liquors is not
unconstitutional when it is resorted to as an incident or means
for successfully enforcing prohibitory laws. The demands
of society have been gradually extending the police power
of the state by making so-called individual rights subservient

to public needs and demands. (*Noble State Bank v. Haskell*, 219 U. S. 104, Ann. Cas. 1912A, 487, 31 Sup. Ct. 186, 55 L. ed. 112, 32 L. R. A., N. S., 1062; *State v. Fargo Bottling Works Co.*, 19 N. D. 396, 124 N. W. 387, 26 L. R. A., N. S., 872; *Pennell v. State*, 141 Wis. 35, 123 N. W. 115; *Commonwealth v. Henry*, 110 Va. 879, 65 S. E. 570, 26 L. R. A., N. S., 883; *United States v. Oregon-Washington Ry. & Nav. Co.*, 210 Fed. 378; *Cureton v. State*, 135 Ga. 660, 70 S. E. 332, 49 L. R. A., N. S., 182; *Motlow v. State*, 125 Tenn. 547, 145 S. W. 177; *Atkinson v. Southern Express Co.*, 94 S. C. 444, 78 S. E. 516, 48 L. R. A., N. S., 349; *Ex parte Muse* (Tex. Cr.), 168 S. W. 520; *Johnson v. State* (Tex. Cr.), 171 S. W. 211; *State v. Phillips* (Miss.), 67 So. 651.)

Under the Arizona statute the having of liquor of any kind for any purpose is unlawful, and yet the court upheld the statute. (*Gherna v. State* (Ariz.), 146 Pac. 494.)

"The decisions very generally unite in holding that any law for the control of the liquor traffic which applies to all persons in a locality is constitutional, and the state may make that locality of whatever character it wishes; it does not matter whether it is a regular political division of the state, or a municipal corporation, or a district fixed arbitrarily by the law." (*People v. Brady*, 262 Ill. 578, 105 N. E. 1; *Martens v. Brady*, 264 Ill. 178, 106 N. E. 266; *Ex parte Francis* (Tex. Cr.), 165 S. W. 147; *State v. Ure*, 91 Neb. 31, 135 N. W. 224; *People v. Hoffman*, 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596; *State v. Richardson*, 48 Or. 309, 85 Pac. 225, 8 L. R. A., N. S., 362; *Mix v. Board of Commrs.*, 18 Ida. 695, 112 Pac. 215, 32 L. R. A., N. S., 534.)

Cleve Groome, *Amicus Curiae*.

The law interferes with other legitimate and valuable property rights which a citizen may have, in the exercise of lawful occupations and industry. In the manufacture of cider vinegar, there is a certain stage during the process of manufacture when the sweet cider goes through a period of fermentation and reaches a stage commonly known as hard cider. At this stage of the manufacture of this article of commerce,

this item of property, the citizen who may be engaged in this occupation is guilty of a crime because he has in his possession intoxicating liquors.

"Each law of the kind involves the questions: First, is there a threatened danger? Second, does the regulation invade a constitutional right? Third, is the regulation reasonable?" (*People v. Smith,* 108 Mich. 527, 62 Am. St. 715, 66 N. W. 382, 32 L. R. A. 853; *In re Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636.)

Sec. 19, art. 3, of the constitution provides that the legislature shall not pass local or special laws in certain enumerated cases, one of which is for the punishment of crimes and misdemeanors. By this act the legislature has attempted to make an act a crime, for instance, in Canyon county, which is not a crime in some of the other counties of the state, for instance, Ada county. (*Bear Lake County v. Budge,* 9 Ida. 703, 108 Am. St. 179, 75 Pac. 614; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234; Lewis' Sutherland, Stat. Const., 2d ed., sec. 197; *Northern Pac. Ry. Co. v. Barnes,* 2 N. D. 310, 51 N. W. 386; *State v. Nelson,* 52 Ohio St. 88, 39 N. E. 22, 26 L. R. A. 317; *Lippman v. People,* 175 Ill. 101, 51 N. E. 872; *Budd v. Hancock,* 66 N. J. L. 133, 48 Atl. 1023; *State v. Cooley,* 56 Minn. 540, 58 N. W. 150; *Rodge v. Kelly,* 88 Miss. 209, 117 Am. St. 733, 40 So. 552, 11 L. R. A., N. S., 635; *Harper v. Galloway,* 58 Fla. 255, 51 So. 226, 19 Ann. Cas. 235, 26 L. R. A., N. S., 794; *Board of Education v. Alliance Assur. Co.,* 159 Fed. 994.)

The act is unconstitutional in that there are subjects contained in said law which are not expressed in the title to the act.

In examining the title we find therein reference to the matter of keeping for sale or gift, but such title does not refer to, nor in any way contain, any mention of the proposition of keeping in his possession, or having in his possession. Neither does the title make any reference to the provision providing that mere possession of the United States internal revenue tax stamp or receipt shall be *prima facie* evidence of the sale of intoxicating liquors. (*Turner v.*

*Coffin,* 9 Ida. 338, 74 Pac. 962; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Gerding v. Board of County Comm'rs.,* 13 Ida. 444, 90 Pac. 357; *Hailey v. State Historical Soc.,* 25 Ida. 165, 136 Pac. 212; *Keller v. State* (Tex. Cr.), 87 S. W. 669, 1 L. R. A., N. S., 489.)

PER CURIAM.—The petitioner, Ed Crane, was arrested upon the charge of having intoxicating liquor in his possession in Latah county and upon preliminary examination had before a magistrate was held to answer said charge in the district court, and in default of bail was committed to the custody of the sheriff. This proceeding was commenced by filing a petition for a writ of *habeas corpus* to procure his release from custody.

The agreed facts necessary to a determination of the questions of law here presented are that on the 16th day of May, 1915, the petitioner had in his possession in Latah county a quantity of whisky for his own use and not for the purpose of selling it or of giving it away; that Latah county now is and on May 16, 1915, was a prohibition district within the meaning of secs. 2, 15 and 22 of chap. 11 (p. 41), Sess. Laws, 1915, which sections are as follows:

"Sec. 2. It shall be unlawful for any person, firm, company, or corporation, its officers or agents, to sell, manufacture or dispose of any intoxicating liquor or alcohol of any kind within a prohibition district or to have in his or its possession or to transport any intoxicating liquor or alcohol within a prohibition district unless the same was procured and is so possessed and transported under a permit as hereinafter provided: provided, that so long as the manufacture of intoxicating liquors for beverage purposes shall not be prohibited within the State by the Constitution or by general law applicable by its terms to the State as a whole it shall not be unlawful for any person, company, or corporation to manufacture intoxicating liquors for beverage purposes in a prohibition district for transportation to and sale outside of a prohibition district: provided, that nothing in this Act

shall be construed to apply to the manufacture, transportation or sale of wood or denatured alcohol.''

''Sec. 15. It shall be unlawful for any person, to import, ship, sell, transport, deliver, receive or have in his possession any intoxicating liquors except as in this Act provided.''

''Sec. 22. It shall be unlawful for any person, firm, company, corporation or agent to have in his or its possession any intoxicating liquors of any kind for any use or purpose except the same shall have been obtained and is so possessed under a permit authorized by this Act.''

The only means provided by the act for procuring intoxicating liquors in a prohibition district for any purpose relates to wine to be used for sacramental purposes and pure alcohol to be used for scientific or mechanical purposes, or for compounding or preparing medicine, so that the possession of whisky, or of any intoxicating liquor, other than wine and pure alcohol for the uses above-mentioned, is prohibited.

One of the contentions made upon behalf of petitioner is that the sections quoted are in contravention of sec. 1 of the 14th amendment to the constitution of the United States, and also of sec. 13, art. 1 of the constitution of Idaho, and that the act in question is not a reasonable exercise of the police power of the state and is void. Sec. 1 of the 14th amendment to the constitution of the United States is as follows:

''All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

Sec. 13 of art. 1 of the constitution of Idaho provides, among other things: ''No person shall . . . . be deprived of life, liberty or property without due process of law.''

No fixed rule has been discovered by which to determine whether or not a statute of the nature of the one under consideration is a proper exercise of the police power, but it may be said the questions propounded to the courts are: Does the statute purport to have been enacted to protect the public health, the public morals, or the public safety? Has it a real and substantial relation to those objects, or is it, upon the other hand, a palpable invasion of rights secured by the constitution? Questions as to the wisdom and expediency of such legislation address themselves to the legislative, not to the judicial branch of the government.

In the case of *Ah Lim v. Territory*, 1 Wash. 156, 24 Pac. 588, 9 L. R. A. 395, Mr. Justice Dunbar, quoting from *Williams v. Cammack*, 27 Miss. 209, 61 Am. Dec. 508, said: "The legislative power 'may be unwisely exercised or abused, yet it is a power entrusted by the constitution to the legislature, which, while exercised within the scope of the grant, is subject alone to their discretion; with which the judicial tribunals have no right to interfere because, in their judgment, the action of the legislature is contrary to the principles of natural justice.' " (See, also, *State v. Lewis*, 134 Ind. 250, 33 N. E. 1024, 20 L. R. A. 52; *People of State of New York ex rel. Silz v. Hesterberg*, 211 U. S. 31, 29 Sup. Ct. 10, 53 L. ed. 75.)

Mr. Justice Hughes in delivering the opinion of the supreme court of the United States in case of *Purity Extract & Tonic Co. v. Lynch*, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. ed. 184, said: "That the state, in exercise of its police power, may prohibit the selling of intoxicating liquors, is undoubted. . . . . It is also well established that, when a state exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government.

. . . . With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature,—a notion foreign to our constitutional system.''

Mr. Justice Harlan, delivering the opinion of the court in case of *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205, said:

''It is, however, contended, that, although the state may prohibit the manufacture of intoxicating liquors for sale or barter within her limits, for general use as a beverage, 'no convention or legislature has the right, under our form of government, to prohibit any citizen from manufacturing for his own use, or for export, or storage, any article of food or drink not endangering or affecting the rights of others.' The argument made in support of the first branch of this proposition, briefly stated, is that in the implied compact between the state and the citizen certain rights are reserved by the latter, which are guaranteed by the constitutional provision protecting persons against being deprived of life, liberty or property, without due process of law, and with which the state cannot interfere; that among those rights is that of manufacturing for one's use either food or drink; and that while, according to the doctrines of the commune, the state may control the tastes, appetites, habits, dress, food, and drink of the people, our system of government, based upon the individuality and intelligence of the citizen, does not claim to control him, except as to his conduct to others, leaving him the sole judge as to all that only affects himself.

''It will be observed that the proposition, and the argument made in support of it, equally concede that the right to manufacture drink for one's personal use is subject to the condition that such manufacture does not endanger or affect the rights of others. If such manufacture does prejudicially affect the rights and interests of the community, it follows, from the very premises stated, that society has the power to

protect itself, by legislation, against the injurious conse-
quences of that business. As was said in *Munn v. Illinois,*
94 U. S. 113, 124, 24 L. ed. 77, 84, while power does not
exist with the whole people to control rights that are purely
and exclusively private, government may require 'each citi-
zen to so conduct himself, and so use his own property, as
not unnecessarily to injure another.'

"But by whom, or by what authority, is it to be determined
whether the manufacture of particular articles of drink
either for general use or for the personal use of the maker,
will injuriously affect the public? Power to determine such
questions, so as to bind all, must exist somewhere; else society
will be at the mercy of the few, who, regarding only their
own appetites or passions, may be willing to imperil the
peace and security of the many, provided only they are per-
mitted to do as they please. Under our system that power
is lodged with the legislative branch of the government. It
belongs to that department to exert what are known as the
police powers of the state, and to determine, primarily, what
measures are appropriate or needful for the protection of
the public morals, the public health or the public safety.

"It does not at all follow that every statute enacted os-
tensibly for the promotion of these ends is to be accepted as
a legitimate exertion of the police powers of the state. There
are, of necessity, limits beyond which legislation cannot
rightfully go. While every possible presumption is to be
indulged in favor of the validity of the statute, *Sinking
Fund Cases,* 99 U. S. 700, 718, 25 L. ed. 496, 501, the courts
must obey the constitution rather than the law-making de-
partment of government, and must, upon their own respon-
sibility, determine whether, in any particular case, these
limits have been passed. 'To what purpose,' it was said in
*Marbury v. Madison,* 5 U. S. (1 Cranch.) 137, 167, 2 L. ed.
60, 70, 'are powers limited, and to what purpose is that
limitation committed to writing, if these limits may, at any
time, be passed by those intended to be restrained? The dis-
tinction between a government with limited and unlimited
powers is abolished, if those limits do not confine the persons

on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation.' The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution.

"Keeping in view these principles, as governing the relations of the judicial and legislative departments of government with each other, it is difficult to perceive any ground for the judiciary to declare that the prohibition by Kansas of the manufacture or sale, within her limits, of intoxicating liquors for general use there as a beverage, is not fairly adapted to the end of protecting the community against the evils which confessedly result from the excessive use of ardent spirits. There is no justification for holding that the state, under the guise merely of police regulations, is here aiming to deprive the citizen of his constitutional rights; for we cannot shut out of view the fact, within the knowledge of all, that the public health, the public morals, and the public safety, may be endangered by the general use of intoxicating drinks; nor the fact established by statistics accessible to everyone, that the idleness, disorder, pauperism and crime existing in the country are, in some degree at least, traceable to this evil. If, therefore, a state deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medical, scientific and manufacturing purposes, to be necessary to the peace and security of society, the courts cannot without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation. Indeed, it is a fundamental principle in our institutions, indispensable to

the preservation of public liberty, that one of the separate departments of government shall not usurp powers committed by the constitution to another department. And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the efforts to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question. So far from such a regulation having no relation to the general end sought to be accomplished, the entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to manufacture intoxicating liquors for his own use as a beverage were recognized. Such a right does not inhere in citizenship. Nor can it be said that government interferes with or impairs anyone's constitutional rights of liberty or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are, or may become, hurtful to society, and constitute, therefore, a business in which no one may lawfully engage. Those rights are best secured, in our government, by the observance, upon the part of all, of such regulations as are established by competent authority to promote the common good. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare.

"This conclusion is unavoidable, unless the fourteenth amendment of the constitution takes from the states of the Union those powers of police that were reserved at the time the original constitution was adopted. But this court has declared, upon full consideration, in *Barbier v. Connolly,* 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. ed. 923, that the fourteenth amendment has no such effect. After observing, among other things, that that amendment forbade the arbitrary deprivation of life or liberty, and the arbitrary spoliation of property, and secured equal protection to all under like circumstances, in respect as well to their personal and civil rights

as to their acquisition and enjoyment of property, the court said: 'But neither the amendment—broad and comprehensive as it is—nor any other amendment was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.' ' "

An examination of the opinion expressing a contrary view will disclose more of argument against the wisdom of such legislation as this than of reason why the aid of the courts may be invoked to defeat it.

The court of criminal appeals of Oklahoma in *Ex parte Wilson,* 6 Okl. Cr. 451, 119 Pac. 596, deciding that an act of the legislature making it unlawful for any person to have or keep in excess of one quart of intoxicating liquor is unconstitutional, quotes from a number of decisions wherein statutes similar in some respects to the act here under consideration have been held to be void, because not a reasonable exercise of the police power and in conflict with sec. 1 of the 14th amendment of the constitution of the United States and with constitutional provisions similar to our sec. 13, art. 1. Quoting with approval from *Commonwealth v. Campbell,* 133 Ky. 50, 117 S. W. 383, 19 Ann. Cas. 159, 24 L. R. A., N. S., 172, it says:

"It will not require any elucidation to show that, if the citizen may be prohibited from having liquor in his possession, he can be prohibited from drinking it, because, of necessity, no one can drink that which he has not in his possession. So that if it is competent for the legislative body of any given city or district, or even the legislature of the state, to prohibit the citizen from having liquor in his possession, then a new and more complete way has been discovered for the establishment of total prohibition, not only in any precinct, town, or county, but throughout the state, because, if it is competent to prohibit the citizen from having liquor in his possession, it necessarily follows that he can neither sell nor use it, as

it is a physical impossibility to do either without first having had the possession of the interdicted liquor.''

The same opinion contains the following quotation from the case of *State v. Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847;

''The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals or safety of the public; and, therefore, the statute prohibiting such keeping in possession is not a legitimate exertion of the police power. It is an abridgment of the privileges and immunities of the citizen without any legal justification, and therefore void.'' (See, also, *State v. Williams,* 146 N. C. 618, 61 S. E. 61, 14 Ann. Cas. 562, 17 L. R. A., N. S., 299.)

Probably the author of none of these opinions would hesitate in holding that the sale of intoxicating liquor may be prohibited as a legitimate exercise of the police power and that such a law would not abridge any of the privileges or immunities of the citizens in such a way as to violate any constitutional provision. Still it must be admitted that if the possession of such liquor ''can by no possibility injure or affect the health, morals or safety of the public,'' the sale is equally harmless, for it only transfers the possession from one person to another. The fact is, that the harm consists neither in the possession nor sale, but in the consumption of it. That is the evil which the people of Idaho, acting through the legislature, are trying to eradicate and since ''it will not require any elucidation to show that, if the citizen may be prohibited from having liquor in his possession, he can be prohibited from drinking it, because, of necessity, no one can drink that which he has not in his possession,'' and since great difficulty has been encountered in enforcing the prohibitory laws, the statement made by the learned jurist in the case of *Mugler v. Kansas, supra,* relative to the manufacture of intoxicating liquors for the maker's own use, as a beverage, might well be repeated with respect to its possession, which would make it read:

"And so, if, in the judgment of the legislature, the possession of intoxicating liquors would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question."

We have reached the conclusion that this act is not in contravention of sec. 1 of the 14th amendment to the constitution of the United States, nor of sec. 13, art. 1, of the constitution of Idaho, that it was passed by the legislature with a view to the protection of the public health, the public morals and the public safety; that it has a real and substantial relation to those objects, and that it is, therefore, a reasonable exercise of the police power of the state.

It is next contended that there are subjects contained in the act under consideration which are not expressed in the title. Therefore, such portions of the act which are not expressed in the title are unconstitutional and void under art. 3, sec. 16, of the constitution. Said section provides that "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The title of the act is as follows: "Defining prohibition districts and regulating and prohibiting the manufacture, sale, keeping for sale, transportation for sale or gift, and traffic in intoxicating liquors and prohibiting drinking and drunkenness in public places in such prohibition districts, and fixing fines and penalties, and repealing chapter 27 and chapter 99 of the Session Laws of 1913."

The objection urged to the sufficiency of the title is based upon the omission in the title of any reference to that portion of the act which prohibits "any person, firm or corporation or agent to have in his or its possession any intoxicating liquors of any kind for any use or purpose, except the same

shall have been obtained and is so possessed under a permit authorized by this act"; also the failure of the title to refer to that portion of the act which provides that "The issuance by the United States of an Internal Revenue Special Tax Stamp or Receipt to any person as a dealer in intoxicating liquors shall be *prima facie* evidence of the sale of intoxicating liquors by such person during the time the stamp or receipt is in force and effect.

"A copy of such Stamp or Receipt or of the record of the issuance thereof, certified to by a United States Internal Revenue officer having charge of such record is admissible as evidence in like case and with like effect as the original Stamp or Receipt."

Necessarily the title of an act must be brief. The object of the title is to give a general statement of the subject matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject matter mentioned and a reasonable tendency to accomplish the purpose of the act. The object of the title is not to state the reason for the passage of the act, or to give an index to its contents, but to give a general statement of the subject matter of the act. (*Tarantina v. Louisville & N. R. R. Co.*, 254 Ill. 624, Ann. Cas. 1913B, 1058, 98 N. E. 999.) As was stated in case of *State v. Pioneer Nurseries Co.*, 26 Ida. 332, 143 Pac. 405, and other cases therein cited, "the title . . . . is sufficient if the act treats of but one general subject and that subject is expressed in the title."

The act under consideration treats of but one general subject, namely, to limit the use of intoxicating liquors. There is nothing contained in the act that is not germane to the general subject or purpose expressed in the title. (*Pioneer Irr. Dist. v. Bradley*, 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *Montclair Township v. Ramsdell*, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. ed. 431.)

In *People v. Parks*, 58 Cal. 624, it is said: "Provisions of an act may be numerous; but however numerous, if they can

be, by fair intendment, considered as falling within the sub-
ject matter of legislation, *or necessary as ends and means
to the attainment of the subject,* the act will not conflict with
the constitution.'' Each and every part of the act in question
comes within the subject matter of legislation, and is neces-
sary as ends and means to the attainment of the object to
protect the health, morals and promote the general welfare
of the citizens of the state by the supression of the unre-
stricted use of intoxicating liquors.

The object or purpose of the clause in the constitution
above quoted is to prevent, as has been frequently stated in
the opinions of this court, the combining of incongruous
matters and objects totally distinct, and having no connec-
tion nor relation with each other; to guard against ''log
rolling'' legislation; and to prevent the perpetration of fraud
upon the members of the legislature or the citizens of the
state, in the enactment of laws. The history of the various
sessions of the legislature of this state in dealing with the
liquor question, and leading up to the passage of the act in
question, conclusively precludes the idea that there was any
fraud connected with the enactment of the statute under
consideration. The unanimity of the legislature in the pas-
sage of the act under consideration is sufficient evidence of
the fact that they acted with full knowledge of the contents
of the bill, and understood the consequences of their act in
so far as they were concerned.

It is a well-established rule that where there is a doubt
whether the subject of the act is sufficiently expressed in its
title, the doubt should be resolved in favor of the validity of
the act. Even though we were in doubt as to the sufficiency
of the title under consideration, we are admonished, in case
of *State v. Pioneer Nurseries Co., supra,* to resolve that doubt
in favor of the validity of the act. There is, however, no
doubt in our minds as to the sufficiency of the title.

It is next insisted that the act in question is local and
special; therefore, in conflict with sec. 19, art. 3, of the con-
stitution, which provides that ''The legislature shall not pass
local or special laws in any of the following enumerated cases,

that is to say: . . . . For the punishment of crimes and misdemeanors. . . . . ''

It is contended by some of the many friends of the court who appeared as counsel in this case that the statute is local and special legislation, for the reason that it makes an act a crime in prohibition territory which is not a crime in wet territory; and, therefore, said statute is not a declaration of a state policy, but is applicable only to counties that have adopted the local option law. However, it will be observed that the statute is applicable to every county in the state alike.

It is true that the act under discussion may have local application, but it is nevertheless a general law, as it applies to all of the counties in the state alike whenever the electors of any county or the county commissioners thereof, or the municipal authorities of any incorporated city or village, conclude to avail themselves of its provisions.

In *Collier v. Cassady,* 63 Fla. 390, 57 So. 617, it was said that a law is a general law which is potentially applicable to every county in the state, though at the time of its passage it applies to but some of the counties.

In *Clark v. Finley,* 93 Tex. 171, 54 S. W. 343, 345, the rule was enunciated that a local statute is one which relates to a particular person or particular thing of a class. And in *State v. California Min. Co.,* 15 Nev. 234, it was said that a special law is one which applies only to an individual or to a number of individuals selected out of the class to which they belong, or to a special locality.

In *People v. Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, 8 N. E. 788, it was said: ''Whether laws are general or not, does not depend upon the number of those within the scope of their operation. They are general, 'not because they operate upon every person in the state, for they do not, but because every person, who is brought within the relations and circumstances provided for, is affected by the laws.' Nor is it necessary, in order to make a statute general, that 'it should be equally applicable to all parts of the state. It is sufficient if it extends to all persons doing or omitting to do an act within the territorial limits described in the statute.' ''

This court in case of *Mix v. Board of County Commissioners,* 18 Ida. 695, 706, 112 Pac. 215, 32 L. R. A., N. S., 534, announced the following doctrine: "The local option law is of general application to every county in the state. While it is left with the people of each county to say whether it shall be enforced in the county, that fact does not make it any the less a general law . . . . under its terms and provisions the electors of each county have a right to vote upon the question whether the sale or disposal of intoxicating liquors as a beverage shall be prohibited in such county. Every county in the state may accept or reject it upon the same terms and conditions. It is clearly a 'general law' within the meaning of that phrase as defined by the leading law-writers, and the courts of last resort of the nation. . . . . "

It has been argued that this law prohibits the use of alcohol by physicians and surgeons in the practice of their professions; that it is unnecessarily stringent and is, therefore, not a proper police regulation. The act expressly provides for the purchase and possession of pure alcohol to be used for scientific purposes. While it is not contended in this case that petitioner had possession of the liquor for scientific purposes and while the liquor was not alcohol, but whisky, so that this question may properly have no bearing upon the decision of this case, however, in order to set the minds of the citizens of the state forever at rest upon this point, we will say that the practice of medicine, surgery, dentistry and dental surgery are sciences, and that pure alcohol may be lawfully procured under the terms of this act in the manner provided therein for use in the practice of these professions, or by any person, citizen or hospital for any scientific or medicinal purpose. Webster defines the word "medicine," used in the sense of the practice of medicine, as follows: "The science and art of dealing with the prevention, cure, or alleviation of disease."

Quoting from the case of *United States v. Massachusetts Gen'l Hospital,* 100 Fed. 932, 938, 7 Words & Phrases Judicially Defined, 6350, refers to the word "science" as applied to surgery, as follows: "In the use of the word 'science,' it

cannot be denied that practical surgery is ordinarily thus spoken of. Webster's Dictionary describes surgery as a 'branch of medical science.' ''

Since the act provides for the possession of pure alcohol to be used for scientific purposes, those who procure it in conformity to the provisions of the law in order to legitimately make use of it for any scientific purpose will not thereby have violated the law.

It has also been argued that this act cannot become effective in local option districts other than those created since its adoption. We have reached a conclusion to the contrary. Section 1 expresses the legislative intent upon this point as follows:

''Sec. 1. A prohibition district within the meaning of this Act and all other acts regulating or prohibiting the traffic in intoxicating liquors shall be any county or incorporated city or village wherein the manufacture, sale, possession, keeping for sale, transportation for sale or gift of intoxicating liquors for beverage purposes is declared unlawful, whether such prohibition district be established by constitutional amendment, legislative enactment, adoption of the provisions of the local option law or by refusal of municipal authorities or county commissioners to grant saloon licenses.''

A number of counties of Idaho became prohibition districts at a time prior to the enactment of the law under consideration, pursuant to the provisions of an act of the legislature approved February 20, 1909, Sess. Laws, 1909, page 9, which is our original local option law, and which provides that counties may by vote determine whether or not the sale or disposal of intoxicating liquors as a beverage shall be prohibited.

It is quite possible that in some of these counties, at least, had that question been submitted to them the electors would have voted to reject the provisions of chapter 11 of the Session Laws, 1915, which make the mere possession of such liquors, in and of itself, a crime. We have reached the conclusion that it is unnecessary to submit the question of the

adoption or rejection of the provisions of this law to the electors of prohibition districts created prior to its adoption.

It is said by Mr. Justice McCord in the case of *Fitch v. State,* 58 Tex. Cr. 366, 127 S. W. 1040, wherein is digested a large number of decisions upon this subject: "If an element should invade local option territory opposed to the enforcement of local option laws and should throw its force against the will of the people and by its craft and cunning devise schemes and means to defeat the purpose of the law and invent a method whereby, through the forms of law, they should evade the crime that had been defined by the legislature, it would be a monstrous doctrine to hold that the legislature is powerless to enact legislation defining offenses and prescribing penalties for the new conditions that may arise because the same was not an offense at the time that local option was adopted." Further, quoting from the case of *Dupree v. State,* 102 Tex. 455, 119 S. W. 301, he said: "The purpose of the prohibition is to prevent the thing prohibited. . . . . Prevention of crime is one of the objects to which the most anxious thoughts and the most constant efforts of thoughtful legislators are directed, and the dealing with the steps preparatory to commission is a favorite method. Our codes are full of instances of this, too numerous and too familiar to need citation." Continuing the opinion in the Fitch case it is said: "We, therefore, hold that the act of the thirty-first legislature making it a penitentiary offense to engage in the business of occupation of selling intoxicating liquors in local option territory is a valid law; that the same applies to territory that had previous to the enacting of said law adopted local option, and that the adoption of local option laws by the people does not withdraw that territory from legislative control to pass all needful legislation to make the local option laws effective, and to see that the will of the people is carried out."

While this court holds that the act under consideration is applicable to all prohibition districts within the state of Idaho, whether they became such before or since its adoption, were it otherwise the argument in favor of restricting its

application to those districts of later origin would not avail the petitioner. This court takes judicial notice that the county of Latah is a prohibition district by reason of the refusal of its board of county commissioners to grant liquor licenses and that no local option election has ever been held therein. Since the enactment of the law here under consideration no liquor license has been granted in that county, and it is, therefore, a prohibition district in contemplation of chapter 11 of the Sess. Laws, 1915, made and continued such by its board of county commissioners since the enactment of that chapter. Counsel for the petitioner and the prosecuting attorney have stipulated, upon this point, as follows: "That Latah county, is now, and was at all times herein mentioned, a prohibition district within the meaning of the act referred to, chapter 11 of the Session Laws of 1915 of the state of Idaho."

By the provisions of chapter 28, Sess. Laws 1915, the entire state of Idaho is constituted a prohibition district and said chapter is made effective on and after January 1, 1916, upon and after which date the provisions of chapter 11, Sess. Laws 1915, will apply to the state at large; in the meantime it is effective in all prohibition districts within the state, whether created before or after its adoption and whether created by constitutional amendment, legislative enactment, adoption of the provisions of the local option law or by the refusal of municipal authorities or county commissioners to grant saloon licenses.

The writ of *habeas corpus* is quashed, and the petitioner is remanded to the custody of the sheriff.