DELANEY *et al. v.* PLUNKETT, sheriff (four cases).

1. The acts of the General Assembly, approved November 17, and November 18, 1915, hereinafter called the prohibitory laws or statutes (Georgia Laws, Extraordinary Session 1915, pp. 77, 90), being acts to prohibit the manufacture, sale, keeping, etc., of intoxicating liquors, and containing, among other provisions, an inhibition against keeping intoxicating liquors in any place of business or public place, and also against the keeping of such liquors in excess of given quantities in any place whatsoever, are a valid exercise on the part of the legislative body of the police power.

2. The restriction as to amount of intoxicating liquors that a citizen is allowed to keep in a building used solely as a dwelling or residence is not unconstitutional.

3. Construing these prohibitory laws in connection with the existing laws, liquors of the prohibited classes can not be kept at all in certain places, can not be kept in excess of limited quantities anywhere, and can not be sold; and where such liquors are kept in excess of the quantities allowed, the keeping or possessing of them is unlawful. The qualities of property theretofore existing in them were taken away, and it was competent for the legislature to declare that they should be seized, condemned, and destroyed, upon order of the judge of the court having jurisdiction; and such provision was a valid exercise of the police power of the State, and not unconstitutional on the ground that it did not provide for a hearing.

4. These prohibitory laws are not unconstitutional on the ground that they hinder, impede, and interfere with the power of Congress to regulate interstate commerce.

5. These laws are not ex post facto in their character nor retroactive.

6. The act approved November 17, 1915 (Acts 1915, p. 77) is not unconstitutional on the ground that it contains matter different from what is expressed in its title.
FEBRUARY 24, 1917.

Petitions for injunction. Before Judge Hammond. Richmond superior court. May 29, 1916.

On May 27, 1916, Matthew Delaney, P. C. Carr, E. M. Green, and A. A. Hett Jr. each presented his petition praying for injunc-

tion against J. T. Plunkett, sheriff of Richmond county. Delaney alleged: That the house in which he resided was a dwelling-house in the City of Augusta, used solely as a dwelling-house by him and his family. "That, having been notified that the prohibition law of the State would go into effect on the first of May, 1916, he had stored in his said residence, in the attic thereof, and sealed up, the following described spirituous liquors: 59 cases whisky, 2 broken cases whisky, 17 ten-gallon jugs of whisky, 3 five-gallon jugs whisky, 34 casks beer (2 broken), 23 drums whisky, one half-barrel wine,—remnants of a stock; and this was stored at said house for his own personal use, and for service of such liquors in his private residence in social intercourse such as he might determine, and was not stored there at such residence or kept at said dwelling either for sale or for any unlawful purpose whatsoever; nor were said liquors bought for the purpose of being stored at said place in anticipation of said law going into effect, but a great part of said liquors he had on hand long before the passage of the said prohibition law by the General Assembly of Georgia in November, 1915." Petitioner is the owner of the personal property described; and while in the lawful possession of the same, on May 27, 1916, certain police officers, during his absence, came to his residence, and, exhibiting some warrant of search to his wife, proceeded to search the house under the warrant, removed therefrom the liquors described above, and carried them to the court-house of the county, where, pursuant to the direction of the chief of police, the liquors were delivered to the sheriff, to be disposed of by him as might be directed by the judge of the city court; and thereafter the judge of that court, without a trial or hearing, passed an order directing the sheriff to destroy all of the liquors. Said liquors were purchased in pursuance of petitioner's right as a citizen of the United States, prior to May 1, 1916, and to be used in his own private residence in ordinary social intercourse between himself and his friends, for which no payment was to be made; and this property has been illegally removed and condemned, as above stated, and is about to be destroyed by the sheriff, and will be destroyed unless he is enjoined. Petitioner has never been arraigned, tried, or convicted of any offense whatever connected with or touching said liquors or any other whiskies.

P. C. Carr's petition was to restrain the sheriff from destroying

13 broken barrels of whisky, 56 barrels of whisky, 96 cases of whisky, 1 barrel of gin, one demijohn of gin (broken), and one broken case of whisky. These liquors certain police officers of the City of Augusta, on May 18, 1916, after breaking into a private building appurtenant to the residence of Carr, seized and delivered to the sheriff, who was about to destroy them under an order of the judge of the city court. Green and Hett, each of whom had in his possession numerous casks and cases of the prohibited liquors, made similar complaints against the sheriff. The court granted a temporary restraining order in each case, requiring the sheriff to show cause, etc. On the hearing the sheriff, without filing an answer, urged a general demurrer. Upon considering the petition and the demurrer the court dissolved the temporary restraining order and refused the injunction; and each of the plaintiffs excepted.

*D. G. Fogarty, C. H. & R. S. Cohen, W. K. Miller, S. H. Myers, C. A. Picquet,* and *L. L. Battey,* for plaintiffs.

*W. Inman Curry* and *T. B. Felder,* for defendant.

BECK, J. (After stating the foregoing facts.) It is unnecessary to take up each of the four cases stated above and deal with them separately. Most of the questions raised for adjudication by these bills of exceptions are common to all of the cases, and a question raised in one or more of the bills of exceptions which is not common to the others will be dealt with separately. Before deciding the point raised in one or more of the bills of exceptions, that the petitioner had not violated the provisions of the act approved November 17, 1915, which relates to intoxicating liquors, prohibiting the manufacture, sale, keeping, etc. (Georgia Laws, Extraordinary Session 1915, p. 77), nor the provisions of the act approved November 18, 1915, relating to intoxicating liquors, prohibiting the delivery, reception, keeping, etc. (Georgia Laws, Extraordinary Session, p. 90), we will consider and dispose of the contentions that these two statutes (which will be hereinafter referred to as the act of November 17 and the act of November 18, 1915, respectively, and as the prohibitory laws or statutes when the two acts are considered and referred to collectively) are unconstitutional and void, because in material particulars they are offensive to indicated portions of the State and Federal constitutions.

Whether the prohibitory acts of 1915 are invalid because they offend the provisions of the constitution of the United States, or

that of the State of Georgia, in the particulars indicated in the pleadings of the plaintiffs, depends upon whether those acts were a valid exercise of the police power of the State. The right of the State, under the police power, to regulate, restrain, or forbid the manufacture or sale of intoxicating liquors has been recognized and proclaimed by the courts of last resort in many of the States of the Union, and by the Supreme Court of the United States. Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. 273, 31 L. ed. 205) ; In re Rahrer, 140 U. S. 545 (11 Sup. Ct. 865, 35 L. ed. 572) ; Foster v. Kansas, 112 U. S. 201 (5 Sup. Ct. 8, 97, 28 L. ed. 629) ; Kidd v. Pearson, 128 U. S. 1 (9 Sup. Ct. 6, 128 L. ed. 346) ; Southern Express Co. v. Whittle, 194 Ala. 406 (69 So. 652) ; Ex parte Crane, 27 Idaho, 671 (151 Pac. 1006) ; Glenn v. So. Ex. Co., 170 N. C. 286 (87 S. E. 136) ; Preston v. Drew, 33 Me. 558 (54 Am. D. 639) ; Henderson v. Heyward, 109 Ga. 373 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384). In the case last cited it is said: "That the State has a right to prohibit absolutely the sale of whisky is no longer an open question, either in this court or in the Supreme Court of the United States. . . Laws prohibiting the sale of whisky are upheld as constitutional upon the ground that its sale is against the best interests of the public at large, and is a business which, if not inherently evil, is of such a nature that its presence is a constant menace to the peace and good order of society, as well as the welfare of individuals. If this be true, it would seem to follow that the State might enact any law which would effectually prohibit the traffic." Another Georgia case laying down the same general doctrine, and bearing directly or indirectly upon several of the important questions involved in this record, is that of Cureton v. State, 135 Ga. 660 (70 S. E. 332, 49 L. R. A. (N. S.) 182). In the case of United States v. Knight Co., 156 U. S. 1 (15 Sup. Ct. 249, 39 L. ed. 325), it is said: "It can not be denied that the power of the State to protect the lives, health, and property of its citizens and to preserve good order and the public morals, 'the power to govern men and things within the limits of its domain,' is a power originally and always belonging to the States, not surrendered by them to the general government, nor directly restrained by the constitution of the United States, and essentially exclusive." It is unnecessary to multiply quotations from authorities stating in the broadest terms the scope of the po-

lice power in its applicability to the subject of regulating the manufacture, sale, and keeping for sale of alcoholic beverages. Forensic battles to extend and limit this power have been fought in the courts of last resort in nearly every State of the Union, and in the Federal courts. So far as relates to the sale and the keeping for sale, the keeping in public places and the manufacture of intoxicating beverages, the disputes which have arisen in regard to these subjects have very largely been settled. Counsel for the plaintiffs in these cases recognize this fact, but they insist that certain of the provisions of the prohibitory statutes of 1915 go beyond the permissible limits and amount to a destruction of rights guaranteed to the citizen under the State and Federal constitutions.

It is insisted that section 20 of the act of November 17, 1915, is violative of the fourteenth amendment of the constitution of the United States, which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." And it is also contended that the said acts of 1915, if they seek to make unlawful the keeping of alcoholic beverages for personal use and social purposes by a citizen in his private residence, are violative of the fourteenth amendment of the constitution of the United States, in that they deprive him of his property without due process of law, no provision being made in said acts requiring notice to him and due opportunity to be heard as to what purpose said property is kept and why it should not be condemned. It may be that the provision in these laws which prevents the keeping for personal and domestic use and social purposes at a citizen's private residence is drastic in its effects and constitutes a new step in legislation aimed at the liquor traffic and the use of alcoholic liquors as a beverage. But we can not agree with the contentions of the plaintiffs that the acts are, on the grounds just stated, an infringement of any of the privileges guaranteed by the constitution. In the case of Mugler v. Kansas, supra, Mr. Justice Harlan, delivering the opinion of the court, said: "In the License Cases, 5 How. 504 [12 L. ed. 256], the question was, whether certain statutes of Massachusetts, Rhode Island, and New Hampshire, re-

lating to the sale of spirituous liquors, were repugnant to the constitution of the United States. In determining that question, it became necessary to inquire whether there was any conflict between the exercise by Congress of its powers to regulate commerce with foreign countries, or among the several States, and the exercise by a State of what are called police powers. Although the members of the court did not fully agree as to the grounds upon which the decision should be placed, they were unanimous in holding that the statutes then under examination were not inconsistent with the constitution of the United States, or with any act of Congress. Chief Justice Taney said: 'If any State deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice, or debauchery, I see nothing in the constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper.' (p. 577.) Mr. Justice McLean, among other things, said: 'A State regulates its domestic commerce, contracts, the transmission of estates, real and personal, and acts upon all internal matters which relate to its moral and political welfare. Over these subjects the Federal government has no power. . . The acknowledged police power of a State extends often to the destruction of property. A nuisance may be abated. Everything prejudicial to the health or morals of a city may be removed.' (pp. 588, 589.) Mr. Justice Woodbury observed: 'How can they [the States] be sovereign within their respective spheres, without power to regulate all their internal commerce, as well as police, and direct how, when, and where it shall be conducted in articles intimately connected either with public morals, or public safety, or the public prosperity?' (p. 628.) Mr. Justice Grier, in still more emphatic language, said: 'The true question presented by these cases, and one which I am not disposed to evade, is whether the States have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease, pauperism and crime. . . Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed, that every law for the restraint and punishment of crime, for the preservation of the public peace, health, and morals, must come within this category. . . It is not necessary, for the sake

of justifying the State legislation now under consideration, to array the appalling statistics of misery, pauperism, and crime, which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the States, is alone competent to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.' (pp. 631, 632.) . . . . . It is, however, contended that, although the State may prohibit the manufacture of intoxicating liquors for sale or barter within her limits, for general use as a beverage, 'no convention or legislature has the right, under our form of government, to prohibit any citizen from manufacturing for his own use, or for export, or storage, any article of food or drink not endangering or affecting the rights of others.' The argument made in support of the first branch of this proposition, briefly stated, is, that in the implied compact between the State and the citizen certain rights are reserved by the latter, which are guaranteed by the constitutional provision protecting persons against being deprived of life, liberty, or property without due process of law, and with which the State can not interfere; that among those rights is that of manufacturing for one's use either food or drink; and that while, according to the doctrines of the Commune, the State may control the tastes, appetites, habits, dress, food, and drink of the people, our system of government, based upon the individuality and intelligence of the citizen, does not claim to control him, except as to his conduct to others, leaving him the sole judge as to all that only affects himself. It will be observed that the proposition, and the argument made in support of it, equally concede that the right to manufacture drink for one's personal use is subject to the condition that such manufacture does not endanger or affect the rights of others. If such manufacture does prejudicially affect the rights and interests of the community, it follows, from the very premises stated, that society has the power to protect itself, by legislation, against the injurious consequences of that business."

We have made the foregoing lengthy quotation from the opinion of the court in the Mugler case, because, in an orderly and logical way, it leads up to and shows what, in the writer's opinion, would be the correct answer to one of the most serious questions made in this record; that is, can the legislature prohibit, under penalties,

the keeping of intoxicating liquors in a citizen's residence for his own consumption? If the conclusion reached by the writer of the opinion from which the extract above is taken, and stated in the last sentence, that is, "If such manufacture does prejudicially affect the rights and interests of the community, it follows, from the very premises stated, that society has the power to protect itself, by legislation, against the injurious consequences of that business," then it is competent for the legislature, in the exercise of the police power, to forbid a citizen from keeping alcoholic liquors for his own use. The property right in a subject-matter of police regulation is always subject to a legislative exercise of the police power over that subject-matter. The manufacture for one's own personal use could hardly be more legitimately a subject of prohibition legislation than the keeping for one's own use. That the right to manufacture for one's personal use or to keep for one's personal use is a right protected by the constitution against legislative interference must be based upon the ground that such manufacture or keeping does not injuriously affect the rights and interests of the community and the other members of society, and that the prohibition against the personal use or manufacture can have no rational relation to the subject of legislation designed to prevent the sale and consumption of liquors, which the legislature believed to be pernicious in their effects, and the causes of disease and crime.

Whatever may be the truth of the contention, upon the one hand, that alcoholic beverages are injurious and pernicious in their effects upon the mind and body of the consumer, and the contention, upon the other hand, that such liquors have food value and if used in moderation they may be promotive of health, and that the temperate use of such drinks is not a menace to society, we are not bound, for the purposes of this decision, to concern ourselves seriously with these considerations. Upon the question whether or not the use of alcoholic beverages by a community is pernicious and productive of vice, crime, disease, and pauperism, it must be conceded that the members of the legislative body were authorized, by a knowledge of facts which are the common possession of intelligent and reading men and women in every community, to conclude that the consumption of ardent spirits was productive of the evils attributed to them. That being true, they had a right to deal

with the subject of prohibiting the use of ardent spirits, in the exercise of the police power. And to take one other important step, whatever may be the opinion of any private individual upon the subject, it was also a question for the legislature to settle, in view of the common knowledge as to the effect of even partial intoxication of an individual man or woman upon their conduct while in that condition, whether or not the prevention of consumption by an individual, in his residence or in a private place, did not bear a logical relation to laws intended to conserve the morals and guarantee the safety of the public. And again, if the prevention of the consumption of ardent spirits in private was one to be considered and acted upon in the perfection of effective laws upon the subject of the consumption of liquors, then the keeping of intoxicating liquors by an individual in his residence or in his office or in some public place also bore a direct relation to the same question, which affects the public.

One objection frequently urged to the passage of prohibitory statutes like those in question in this case is, that such prohibitory laws do not in fact prohibit. The legislative body might well have concluded that the keeping of alcoholic liquors in any place, however private, was one of the effective means of removing the defect in prohibitory statutes just indicated. In the case of Purity Extract Company v. Lynch, 226 U. S. 192 (33 Sup. Ct. 44, 57 L. ed. 184), it is said: "That the State in the exercise of its police power may prohibit the selling of intoxicating liquors is undoubted. Bartemeyer v. Iowa, 18 Wall. 129 [21 L. ed. 929]; Boston Beer Company v. Massachusetts, 97 U. S. 25 [24 L. ed. 989]; Mugler v. Kansas, 123 U. S. 623 [supra]; Kidd v. Pearson, 128 U. S. 1 [supra]; Crowley v. Christensen, 137 U. S. 86 [11 Sup. Ct. 13, 34 L. ed. 620]. It is also well established that when a State, exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. Booth v. Illinois, 184 U. S. 425 [22 Sup. 425, 46 L. ed. 623]; Otis v. Parker, 187 U. S. 606

[23 Sup. Ct. 168, 47 L. ed. 323]; Ah Sin v. Wittman, 198 U. S. 500, 504 [25 Sup. Ct. 756, 49 L. ed. 1142]; New York ex rel. Silz v. Hesterberg, 211 U. S. 32 [29 Sup. Ct. 10, 53 L. ed. 75]; Murphy v. California, 225 U. S. 623 [32 Sup. Ct. 697, 56 L. ed. 1129]. With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it can not be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system. . . A strong illustration of the extent of the power of the State is found in Silz v. Hesterberg, 211 U. S. 31. The State of New York by its forest, fish, and game law prohibited the possession of certain game during the closed season. The statute covered game coming from without the State. It appeared that Silz was charged with the possession of plover and grouse which had been lawfully taken abroad during the open season and had been lawfully brought into the State; that these game birds were varieties different from those known as plover and grouse in the State of New York; that, although of the same families, in form, size, color, and markings, they could readily be distinguished from the latter; and that they were wholesome and valuable articles of food. This court affirmed the conviction, saying (p. 40): 'It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, and prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the legislature of the State is authorized to pass measures for the protection of the people of the State in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted.'" It is well reasoned, in the case last referred to, that it was competent for the legislature of the named State to recognize the difficulties besetting the administration of laws aimed at the prevention of traffic in intoxicants; and it was also said, in the same connection: "The State, within the limits we have stated, must decide upon the measures that are needful for the

protection of its people, and, having regard to the artifices which are used to promote the sale of intoxicants under the guise of innocent beverages, it would constitute an unwarrantable departure from accepted principle to hold that the prohibition of the sale of all malt liquors, including the beverage in question, was beyond its reserve." In the case of Silz v. Hesterberg, 211 U. S. 31 (supra), where it was held to be within the police power of the State to prohibit the possession of game during the closed season, even if brought from without the State, the court, in addition to what has been quoted above, said: "In order to protect local game during the closed season it has been found expedient to make possession of all such game during that time, whether taken within or without the State, a misdemeanor. In other States of the Union such laws have been deemed essential, and have been sustained by the courts. Roth v. State, 51 Ohio St. 209 [37 N. E. 259, 46 Am. St. R. 566]; Ex parte Maier, 103 California, 476 [37 Pac. 402, 42 Am. St. R. 129]; Stevens v. The State, 89 Maryland, 669 [43 Atl. 929]; Magner v. The People, 97 Illinois, 320. It has been provided that the possession of certain kinds of game during the closed season shall be prohibited, owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another State or country. The object of such laws is not to affect the legality of the taking of game in other States, but to protect the local game in the interest of the food supply of the people of the State. We can not say that such purpose, frequently recognized and acted upon, is an abuse of the police power of the State, and as such to be declared void because contrary to the fourteenth amendment of the constitution." The ruling there made, as well as that in the case of Purity Extract Co., supra, bears directly upon the question as to whether or not the legislature can in the exercise of the police power, in enacting legislation to prevent the sale and consumption of intoxicants by the public, embody in such legislation prohibition against the keeping of such intoxicants, which provisions have a rational relation to the chief end sought to be accomplished, that is, traffic in such liquors and their general consumption. Inhibition against the keeping in any place, in a private residence as well as in a place of business, in prohibition laws has a direct relation to the main end sought, to wit, the stopping of the traffic in the objectionable beverages and

their ultimate consumption. If any considerable number of citizens in any given community in this State can, upon a showing that the liquors are kept for personal use and for social and domestic purposes in their own residences, keep on hand as much as was contained in the smallest of the stocks of liquors possessed by any one of the four plaintiffs whose rights and complaints are now being considered, would not the effectual enforcement of laws directed at the unlawful traffic in intoxicating liquors and the general consumption of them be rendered exceedingly difficult, or practically nullified?

There are some who entertain the opinion that the prevention of the traffic can properly be made the end of laws passed in the exercise of the police power, but that the prevention of the consumption of ardent spirits can not properly be made the object of legislation. This does not comport with the conclusion reached, after mature consideration, by publicists of eminent ability and by courts, as announced by them in judicial utterances in cases involving legislation in many respects of the same general character as that which we now have under consideration. In the early case of Lincoln v. Smith, 27 Vt. 328, Bennett, J., delivering the opinion of the court, after restating certain of the principles laid down in the license cases to which reference was made in the Mugler case, supra, and after the citation of certain other cases, said: "Though the act of our legislature is entitled an act 'to prevent the traffic in intoxicating liquors for the purpose of drinking,' yet the primary object and end of the law is the prevention of intemperance, pauperism, and crime; and the prohibition of the traffic is but the medium through which the object and end of the law is to be obtained. If it be once granted that the use of intoxicating liquors as a drink is worse than useless, and intemperance a legitimate consequence of such use, and that intemperance is an evil, injurious to health and sound morals, and productive of pauperism and crime, it seems to us that a law designed to prevent such consequences must clearly fall within the class of laws dominated police regulations. The legislature in passing the law in question doubtless supposed that the traffic and drinking of intoxicating liquors went hand in hand, and that they were even more than twin sisters, that they were not only born together, but that they would also die together, and that by cut-

ting off the one the other would also fall with it. Whether the drinking of intoxicating liquor tends to produce intemperance, and whether intemperance is a gangrene, tending to corrupt the moral health of the body politic, and to produce misery and lamentation; and whether the law in question is well calculated to cut off or mitigate the evils supposed to flow directly from intemperance, and indirectly from the traffic in intoxicating liquors, were questions to be settled by the lawmaking power; and their decision in this respect is final, and not to be reviewed by us." In the case of Marks v. State, 159 Ala. 71 (48 So. 864, 133 Am. St. R. 20), the court, speaking of various prohibition statutes, said: "The objects and purposes of those statutes had been defined by the courts; and, being incorporated and re-enacted in the general law, they bring with them such judicial constructions. The main object and purpose of all is the same. Some may be restricted, and some more extensive and exclusive than others; but the main object and purpose of all, as said by Justice Somerville, in Carl's Case, 87 Ala. 17, 6 South. 118, 4 L. R. A. 380, is 'to promote temperance and prevent drunkenness. The mode adopted to accomplish this end is the prevention of the sale, the giving away, or other disposition of intoxicating liquors.'" In the case of State v. Phillips, 109 Miss. 22 (67 So. 651), it is said: "If the object of prohibition of the sale of intoxicating liquors is not to prevent, as far as may be, the drinking of such liquors, then it is difficult to justify the laws prohibiting the sale. Of course the typical public saloon is demoralizing, but there would be no practical difficulties in the way of so regulating the saloon as to minimize all of the evils which flow from the saloon, except the evils which flow from the drinking of intoxicating beverages. If it is not a menace to the health, morals, welfare, and peace of the public for men and women to drink alcoholic liquors, it would seem that the public could have no interest in prohibiting the sale. The ultimate purpose and end of prohibition is to prevent the use of liquor as a beverage. This ultimate end is approached step by step, and when the preponderant and prevailing morality of the nation believes that the public welfare demands the final step, the way will be found to accomplish the end." In the case of State of West Virginia v. Adams Express Co., 219 Fed. 794 (135 C. C. A. 464), it is said: "In trying to comprehend the legislative purpose in pro-

hibition statutes it is important to remember that the ultimate end sought in prohibition legislation is not the prevention or restriction of the mere sale of intoxicants, but the prevention of their consumption as a beverage. The sale being the most usual and obvious means by which drinking is accomplished, legislation is more often directed against the sale. But it is upon the recognized evil of individual consumption as a beverage that the right of a State under its police power rests to enact prohibitive legislation; and in the exercise of that right it can not be denied that the State may legislate not only against acts which would constitute a sale at common law, but against other acts within its borders, such as deliveries by common carriers, which tend to defeat or weaken its public policy of preventing the consumption of liquor as a beverage." In the case of Crowley v. Christensen, 137 U. S. 87 (supra), Mr. Justice Field, delivering the opinion of the court, called attention to the contention that as the liquors are used as a beverage, and the injury following them, if taken in excess, is voluntarily inflicted and is confined to the party offending, their sale should be without restrictions, the contention being that what a man shall drink, equally with what he shall eat, "is not properly matter for legislation," and in combating this contention, said: "There is in this position an assumption of a fact which does not exist, that when the liquors are taken in excess the injuries are confined to the party offending. The injury, it is true, first falls upon him in his health, which the habit undermines; in his morals, which it weakens; and in the self-abatement which it creates. But, as it leads to neglect of business and waste of property and general demoralization, it affects those who are immediately connected with and dependent upon him."

Part of what we have said above and a portion of the extracts from the opinions delivered in the adjudicated cases bear directly upon the constitutional right of a citizen to keep and possess intoxicants for private and personal use, and still more of what is said above bears indirectly upon that question. By the expression, "constitutional right," as just used, we mean a right guaranteed to the citizen by the constitution and so guaranteed as to prevent legislative interference with that right. And if what we have said above, and what is said by other courts in the extracts from their judicial utterances which we have set forth, be sound, the ab-

solute right of an individual to receive, possess, and keep on hand intoxicating liquors for his personal use, though kept in his residence, does not exist; his right to possess and keep alcoholic beverages is a right subject to legislative restriction, regulation, and prohibition. But before we leave this subject we will call attention to other judicial utterances bearing upon it and other questions involved in these records. In the case of United States ex rel. Zimmerman v. Oregon-Washington R. &c. Co., 210 Fed. 378, the judge delivering the opinion said: "The language of the Idaho statute is manifestly broad enough to make unlawful all intrastate shipments of intoxicating liquors (except certain shipments not material here), although intended for the personal use of the consignee. And in my judgment it should be so treated and considered by a nisi prius court sitting in another jurisdiction, until it is otherwise interpreted by the courts of Idaho, and especially in a case where it is sought by mandamus to compel a defendant to violate the terms of the statute. Nor am I prepared at this time to say that such a provision is unconstitutional. The Supreme Court of the United States held, in Mugler v. Kansas, 123 U. S. 662 [supra], that a State might lawfully prohibit the manufacture of intoxicating liquors for the personal use of the manufacturer, if in the judgment of the lawmaking power such manufacture would tend to cripple or defeat the effort to guard the community against the evils arising from the excessive use of such liquors, and that the courts should not, upon their views of what is best and safest for the community, disregard the legislative determination of that question. If, for the reason stated, a State may lawfully prohibit the manufacture of intoxicating liquors for the personal use of the manufacturer, why may it not for the same reason lawfully prohibit the transportation thereof for the individual use of the consignee? The question in either case would seem to be one of public policy, the determination of which belongs to the lawmaking power and not the courts. I therefore assume, for the purposes of this case, that the laws of Idaho prohibit the intrastate shipment of intoxicating liquors into dry territory for the individual use of the consignee, and that such legislation is valid." And we may add, that the same line of reasoning, when the relation of keeping on hand in a private residence to the general purpose of a prohibitory statute is considered, leads to the conclusion

36

that in the exercise of the police power the State may constitutionally enact a law inhibiting the storing and keeping on hand of a quantity of intoxicants, even though they be stored and kept in a private residence for the purpose of personal use. In the case of Southern Express Co. *v.* Whittle, supra, the Supreme Court of Alabama said: "If the right at common law to manufacture an intoxicating liquor for one's own personal use, out of one's own materials by the application of one's own personal effort, may be forbidden by appropriate legislation under the police power, as was expressly ruled in Mugler *v.* Kansas, supra, it can not be logically or soundly asserted that the receipt or possession of more than a specified quantity at one time may not be forbidden by statute, especially when the sale or other disposition of intoxicants is forbidden in the State's effort to promote temperance and to suppress the evils of intemperance by visiting its power upon one of the means usually productive of intemperance, viz., the traffic therein, or, as has been before quoted from our Marks and Carl Cases, ante, to remedy the evil present in 'the use of intoxicating liquors, as a beverage.' The power confirmed in Mugler *v.* Kansas must necessarily comprehend the lesser manifestation of a like power by regulating the quantity to be received or possessed at one time in 'dry territory' in the State. Furthermore, it would appear to be but the assertion of a self-evident truth to say that, since one may be validly forbidden to sell his intoxicating liquor to another, that other may be validly forbidden to buy the article from him; and, if one may be validly forbidden to sell, and necessarily validly forbidden to deliver, the article to another, that other may be validly forbidden to accept the delivery. As to the seller, the prohibitions stated would operate upon him and upon his property, but not in the sense or with the effect of infringing any constitutional right or immunity (Dorman's case, supra) ; whereas, in the case of the buyer, the prohibitions would operate in anticipation, qualifying his right, in the interest of the public welfare as determined by legislative authority, to acquire a property interest in the article above a defined quantity at one time." See, in this connection, State *v.* Phillips, 109 Miss. 22 (supra). In the case of Glenn *v.* Southern Express Co., 170 N. C. 286 (87 S. E. 136), the extract which we have just set forth from the case of Southern Express Co. *v.* Whittle is quoted with approval. The North Carolina court

also, after pointing out that in the case of Mugler *v.* Kansas, supra, the Supreme Court of the United States held that it was within the power of the State to prohibit the manufacture of intoxicating liquors for one's own personal use, asks, "And if this may be done, why may not the State limit the quantity which may be received for use?" To which we add, as we have done in connection with another quotation above, the question, Why can not the State limit the amount which may be kept on hand in one's possession for his personal use? We are of the opinion that, in view of the relation of this question to the public good morals and safety, the legislature may, in the legitimate exercise of the police power, say what quantity may be kept or possessed, even in a private residence for personal use; and in view of the relation of the fact of keeping or having possession of intoxicating liquors to the general purpose of prohibition laws, we do not see why it would not be competent for the legislature to prohibit altogether the keeping or having in one's possession any quantity of intoxicating liquors.

It is insisted with especial emphasis that section 20 of the act of November 17, 1915, is unconstitutional and void, on the ground that it is violative of that provision of the fourteenth amendment of the constitution of the United States which declares that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The section just referred to reads as follows: "Sec. 20. Be it further enacted by the authority aforesaid, that no property rights of any kind shall exist in said prohibited liquors and beverages, or in the vessels kept or used for the purpose of violating any provision of this act or any law for the promotion of temperance or for the suppression of the evils of intemperance; nor in any such liquors when received, possessed, or stored at any forbidden place or anywhere in a quantity forbidden by law, or when kept, stored, or deposited in any place in this State for the purpose of sale or unlawful disposition or unlawful furnishing or distribution; and in all such cases the liquors and beverages, and the vessels and receptacles in which such liquors are contained, and the property herein named, kept, or used for the purpose of violating the law as aforesaid, are hereby de-

clared to be contraband and are to be forfeited to the State when seized, and may be ordered and condemned to be destroyed after seizure by order of the court that has acquired jurisdiction over the same, or by order of the judge or court after conviction when such liquors and such property named have been seized for use as evidence." We do not think this section of the act is unconstitutional for any of the numerous reasons assigned. It is true that it does not provide for a hearing before any judicial tribunal after seizure of the intoxicating liquors kept in contravention of the provisions of the act; but if what we have said in the preceding part of this opinion is sound, no hearing was necessary before the issuance of an order by the proper court for the destruction of the liquors seized and taken in accordance with the directions of this act. The liquors on hand in each case were in excess of the amount which the law allows to be in the possession of any one person at one time. Consequently the possession was unlawful. Under the provisions of the law, the person in possession had no right to keep the liquor for his personal use, nor for any domestic or social purpose. If he could not have it in possession, he could not handle it; and of course, under our law as it stands, he could not sell it. Without reference to the dictum in the statute last referred to, that "no property rights of any kind shall exist in said prohibited liquors," when the terms of the act which inhibit the selling and keeping of liquors are given their full force and effect, then the liquors no longer had any of the qualities of property: a thing that can not be kept for use and can not be sold has none of the qualities of property. This conclusion follows logically and necessarily from our holding valid the inhibition against keeping or possessing liquors in violation of the terms of the act. If the liquors kept in violation of the terms of the act lost their qualities as property, the provision that they might be seized, condemned, and destroyed violated no right of the possessors of the liquors. Numerous cases might be cited holding that legislative acts authorizing the seizure and destruction of intoxicating liquors kept in violation of law, after notice to and a hearing of the claimants, are not unconstitutional. And if the having on hand of liquors in the prohibited quantities, under the terms of the act which we are construing, was only prima facie evidence of the possession being unlawful, then it would be necessary for this act to

have provided for a notice to and hearing of the claimants. Properly construed, section 20 of the act of November 17, 1915, relates merely to liquors the keeping or having possession of which is absolutely unlawful. And that being the case, a hearing, where it was admitted that the thing seized was liquor in quantities in excess of that allowed by law, was entirely unnecessary. Suppose that a hearing had been had; what questions could have been raised before the judge? If it had been contended that the liquors seized were not intoxicating nor alcoholic, that they did not belong to any of the inhibited classes, or that they were not in quantity such as to make their possession unquestionably unlawful, and that they were about to be destroyed, then there would have been subject-matter for a hearing and a trial. So far as this act provides for the seizure, condemnation, and destruction of liquors, it provides for nothing more than for the seizure and destruction of that which it is absolutely unlawful to keep. And the seizure of these goods, in the present cases, their condemnation, and the order for their destruction, violated no constitutional right. In the case of Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. 499, 38 L. ed. 385), it is held: "The provision in the statutes of New York, c. 591 of the Laws of 1880, as amended by c. 317 of the Laws of 1883, that nets set or maintained upon waters of the State, or on the shores of or islands in such waters, in violation of the statutes of the State enacted for the protection of fish, may be summarily destroyed by any person, and that it shall be the duty of certain officers to abate, remove, and forthwith destroy them, and that no action for damages shall lie or be maintained against any person for or on account of such seizure or destruction, is a lawful exercise of the police power of the State, and does not deprive the citizen of his property without the process of law, in violation of the provision of the constitution of the United States." In the opinion in that case it is said: "It is not easy to draw the line between cases where property illegally used may be destroyed summarily and where judicial proceedings are necessary for its condemnation. If the property were of great value, as, for instance, if it were a vessel employed for smuggling or other illegal purposes, it would be putting a dangerous power in the hands of a custom officer to permit him to sell or destroy it as a public nuisance, and the owner would have good reason to complain of such act as depriving him of his prop-

erty without due process of law. But where the property is of trifling value, and its destruction is necessary to effect the object of a certain statute, we think it is within the power of the legislature to order its summary abatement. For instance, if the legislature should prohibit the killing of fish by explosive shells, and should order the cartridges so used to be destroyed, it would seem like belittling the dignity of the judiciary to require such destruction to be preceded by a solemn condemnation in a court of justice. The same remark might be made of the cards, chips, and dice of a gambling-room."

As we have pointed out above, the whisky seized in these cases necessarily had no value, for it could not be kept for use, handled, nor sold. It was deprived of all value by the terms of the act which we have upheld; and· the vessels in which the liquors were contained were necessarily of but trifling value.

In certain of the cases which we have before us it was insisted that, where intoxicating liquors are kept for personal use in a building used exclusively as a dwelling, not for the purpose of sale or disposition contrary to law but solely as one's own personal property, the inhibitory terms of the act do not apply; and attention is called to the last clause of section 2 of the act of November 17, 1915, which reads as follows: "but this inhibition does not include, and nothing in this act shall affect, the social serving of such liquors and beverages in private residences in ordinary social intercourse;" and to the language of section 7 of the same act, which reads as follows: "That the keeping of the liquors or beverages, or any of them, mentioned in section 1 of this act, in any building not exclusively used for a dwelling, shall be prima facie evidence that they are kept for sale or with intent to dispose of same contrary to the law." Our reply to this contention is, that the language of section 2 and section 7, just quoted, is to be construed in pari materia with section 16 of the act of November 18, 1915, which makes it unlawful for any person to possess or have in possession at one time more than the stated amount of inhibited liquors. The section last referred to renders it absolutely unlawful to keep more than the stated amounts in any place. It is of general application, not limited to places of business nor public places, but applies to any place where liquors may be kept; while section 2 of the act of November 17, 1915, makes it unlawful for a person

to keep on hand at certain stated places any of the prohibited liquors in any quantity whatsoever; and the language quoted from section 2 modifies the general provision in the section preceding that section, by allowing liquors and beverages to be kept and served in private residences, without stating in what quantities, but the limitation as to quantity is supplied in section 16 of the act of November 18, 1915, and when that quantity is exceeded the liquors become contraband, even when kept in private residences. Section 7 of the act of November 17, 1915, which is also referred to, makes the keeping of liquors in any quantity in a place other than a private residence prima facie evidence that such liquor is kept for sale. There is no conflict in the provisions of these three sections. At first blush the sections may appear to be confusing in their provisions, but the language in all three sections is easily reconcilable and harmonizes with the general scheme of the legislative acts.

There is no merit in the contention that section 20 of the act of November 17th is unconstitutional, as being in conflict with art. 1, sec. 8, paragraphs 1 and 3, of the constitution of the United States, on the ground that it "impairs the power of the Congress of the United States to raise revenue for the support of the government thereof, and to regulate commerce among the several States, as hindering and impeding the exercise of those powers." It seems that in the decision in the cases of Clark Distilling Co. v. Western Maryland Railway Co., and Clark Distilling Co. v. American Express Co., recently decided by the Supreme Court of the United States, 242 U. S. 311 (37 Sup. Ct. 180), upholding the Webb-Kenyon act, the constitutional objection to the Georgia law, based on the contention that it impairs the power of Congress over interstate commerce, is disposed of adversely to the plaintiffs.

The point is also made that certain provisions of these acts under consideration are in the nature of retroactive laws. The prohibitory acts were passed on November 17, and November 18, 1915. They did not become of force until May 1, 1916, about five and a half months after their passage, and the prohibitory declarations in these laws did not take effect until then, and did not seek to penalize the keeping or having of the prohibited liquors prior to May 1, 1916. We do not think, therefore, that the law was in any sense an ex post facto law or retroactive in its nature. Questions

involving similar principles have been ruled before, but we think the citation of authorities for the proposition is unnecessary.

There is no merit in the contention that the act of November 17, 1915, is unconstitutional because it contains matter different from what is expressed in its title, in that there is nothing in the title to indicate that there would be no property rights in liquor held and possessed by petitioners at their dwellings and not kept for the purpose of sale or for the purpose of avoiding the law. The title of the act declares it to be an act, among other things, to prevent evasions and violations of certain laws of Georgia referred to, and to make the enforcement thereof speedy, certain, and effective, which purposes are to be accomplished· in certain ways pointed out in the title, among them being that of abolishing "all property rights in said liquors and in certain enumerated classes of physical objects when kept or used for the purpose of violating said laws." And, as we have already pointed out, the keeping of liquors beyond certain quantities, even in dwellings and private residences, was a violation of the law. Moreover, the inhibition against keeping liquors in private dwellings might well have been regarded by the legislature as constituting a part of the measure necessary to prevent an evasion of the prohibitory laws.

There is no merit in any of the objections, based upon constitutional grounds, which are not specially dealt with, urged against the validity of the statutes in question.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Atkinson, J., dissenting.*

ATKINSON, J., dissenting. In so far as section 20 of the act approved November 17, 1915 (Acts 1915, p. 77), is to be construed as denying a property right in certain liquors and beverages of the kinds described in section one of the act, which an individual might have had in those liquors in his possession in this State prior to May 1, 1916 (the date on which the act went into effect), and in so far as the act on the basis of such denial of property authorized summary destruction of liquors which a person lawfully owned and possessed in this State before the act went into effect, and which he continued to keep after the act went into effect, that part of the act amounts to divesting an owner of his property by legislation, and is violative of those provisions of the State and Federal constitutions which guarantee the right of private property

and immunity from retroactive laws.    What is here said also applies to so much of sec. 16 of the act approved Nov. 18, 1915 (Acts 1915, p. 90), as purports to inhibit the keeping on hand of liquors for a use not illegal prior to the 1st day of May, 1916.    While the opinion by the majority is supported upon all other propositions ruled, no reason is set forth in the opinion authorizing a ruling contrary to what is above said; nor do any of the decisions cited from the Supreme Court of the United States or from this court go to the extent of upholding a statute as drastic in its provisions as are those contained in sections 20 and 16 of the acts referred to above.