## BARBOUR v. THE STATE.

1. Intoxicating liquors being subject to the police power of a State, even when such liquors are acquired legally they are taken with their inherent infirmities, and subject to such legislation as the State may enact under its police power. The legislation, as an incident to the main purpose, may impair the property value of the liquor or destroy it altogether, when such incidental result is necessary to the main purpose and enforcement of the law. The act of the General Assembly which forbids the possession of more than a specified amount of intoxicating liquor at one time applies alike to that which was acquired before and after May 1, 1916, and is not unconstitutional for any of the reasons assigned.
2. Grounds of a motion for a new trial not approved by the trial judge can not be considered. The evidence warranted the verdict.

No. 206.  APRIL 10, 1917.

Accusation of misdemeanor; from city court of Savannah—Judge Rourke. August 8, 1916. Transferred by Court of Appeals.

Andrew D. Barbour was convicted in the city court of Savannah on an accusation charging him with a violation of the prohibition law. The accusation contained six counts. The defendant was found guilty on the fourth count. He filed a motion for a new trial, and a motion in arrest of judgment. Both motions were overruled, and he excepted. The fourth count charged him with having in his possession at one time more than one gallon of vinous liquor.

*Robert L. Colding,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general,* contra.

GILBERT, J. (After stating the foregoing facts.) 1. Among the provisions of the prohibition law enacted at the extraordinary session of the General Assembly in 1915, which became effective on May 1, 1916, was that which forbids any person to have in his possession at any one time more than one gallon of vinous liquors. It was for a violation of this provision of the law that the plaintiff in error was sentenced. He insists, that he possessed the wine prior to May 1; that, having acquired the wine when it was lawful to do so, and before his property rights were affected by the law, his possession was not a violation of the act; and that to consider the law as applying to liquor in possession before the law became effective would be to give to it a construction repugnant to the constitution of Georgia (Civil Code, § 6358) and to the fourteenth amendment of the constitution of the United States. That this

contention is unsound we entertain no shadow of a doubt. Intoxicating liquors are peculiarly, beyond all cavil, the subject of police power of the State, and their inherent evil qualities are so well recognized as to form an unquestioned basis for such exercise of power. We will, therefore, not consume space for the citation of authorities on this point. The exercise of this power by legislatures, as well as the adjudications of the courts, has been progressive toward the complete outlawing of intoxicating liquors. The present nearly harmonious view of the question did not always prevail. There was a time when many things now forbidden by law, because harmful to the public morals, were permitted to flourish without let or hindrance. Lotteries, bucket-shops, and numerous other activities, as well as bar-rooms, were considered legitimate. Few will now be found to defend any of these. The dangerous character of alcoholic liquor is universally recognized by the courts. The fact that it is an article fraught with such dangerous perils to the morals, good order, health and safety of the people places it upon a different plane from that of other kinds of business. It is well settled that in legislating in behalf of the public morals, health and safety, the State by reason of its police power may enact laws which incidentally impair property value (Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205) or destroy it altogether. Cureton v. State, 135 Ga. 660 (70 S. E. 332, 49 L. R. A. (N. S.) 182) ; Southern Ex. Co. v. Whittle, 194 Ala. 406 (69 So. 652) ; Glenn v. So. Ex. Co., 170 N. C. 286 (87 S. E. 136) ; Preston v. Drew, 33 Me. 558 (54 Am. D. 639) ; Patsone v. Pennsylvania, 232 U. S. 138 (34 Sup. Ct. 281, 58 L. ed. 539) ; Silz v. Hesterberg, 211 U. S. 31 (29 Sup. Ct. 10, 53 L. ed. 75). It is true that the constitution declares: "Protection to person and property is the paramount duty of government," but it should be noted that protection to person comes first, and also that in the very first article of the bill of rights it is written, "All government . . is instituted solely for the good of the whole."

The police power of the States, touching the health, morals, property, peace, good order, and dignity of the people, is essential to the existence and prosperity of the States; and this power has never been delegated to the Federal government, nor restrained by the constitution of the United States. Barbour v. Connolly, 113 U. S. 27 (5 Sup. Ct. 357, 28 L. ed. 923) ; In re Rahrer, 140 U. S.

545 (11 Sup. Ct. 865, 35 L. ed. 572); United States *v.* Knight Co., 156 U. S. 1 (15 Sup. Ct. 249, 39 L. ed. 325).

The impairment of property value or destruction is not the primary object, but is permitted because it is a necessary incident to the main purpose. Intoxicating liquors being subject to the police power of the State, they are, even when lawfully acquired, taken with their inherent infirmities, and subject to such legislation as may hereafter be enacted within the police powers of the State. "The ultimate purpose and end of prohibition is to prevent the use of liquor as a beverage. This ultimate end is approached step by step, and when the preponderant and prevailing morality of the nation believes that the public welfare demands the final step, the way will be found to accomplish the end." State *v.* Phillips, 109 Miss. 22 (61 So. 651). As a means of preventing the use of liquor as a beverage the State has the power, it is universally admitted, to prohibit traffic in intoxicating liquors, and this power would be futile unless there was also full power to make it effective. Since the State has the power to prohibit the manufacture and sale, it also has the power, as an incident to the right, to restrain the means by which intoxicating liquors for personal use can be obtained. Clark Distilling Co. *v.* Western Md. Ry. Co., 242 U. S. 311, 320 (37 Sup. Ct. 180, 61 L. ed.      ). It follows as an irresistible conclusion, that likewise the State may constitutionally prohibit the possession of intoxicating liquors, as an incident to the main purpose.

The act in question became effective many months after its passage and approval by the Governor. Notwithstanding this fact, it is insisted that its provisions do not apply to liquors in possession at the time it became effective. If this were true, the beneficent effects of the legislation would be a negligible quantity. If intoxicating liquors in possession of persons in Georgia at the time were not affected by the law, surely such liquor stored in other States, but owned by citizens of Georgia, would not be affected. To follow this reasoning would lead us to the inevitable result that no liquor in existence prior to May 1, 1916, upon the inhabited globe would be affected by the legislation, and hence, if found in possession after May 1, 1916, such possession would not be made illegal by the act. It requires no argument to those who are familiar with the ingenuity of persons who desire to traffic in

intoxicating liquors, to demonstrate that under such a construction the most stringent prohibitory laws conceivable would become a matter of jest. Dealers in alcoholic liquors have never been known to be overnice and delicate in adhering to the strict letter of the law. For the reasons above stated the State may not only limit the quantity of liquor a person may possess, but it may forbid him to possess any at all, whether acquired before the law became effective, or afterward, this power being a necessary incident to the main purpose of the legislation, and to the enforcement of the law. All provisions of this law are incidental to the main purpose. Ownership and property rights are distinct from the matter of possession. But neither ownership, nor property rights, nor possession will be permitted to hinder the operation of laws enacted for the public welfare. Man possesses no right under the laws or constitutions, State or Federal, which is not subservient to the public welfare. The public, through its proper channels, may commandeer a proportion of his property or his income for the support of the government. At his death it may subject to the public use a portion of his estate; and when necessary for the public defense in times of war, it may conscript such citizens as are required, and expend their very life blood that the State may live. Under the police power it may slaughter diseased cattle; it may destroy unwholesome food; it may compel vaccination; it may confine the insane or those afflicted with contagious disease; suppress obscene publications and houses of ill-fame (Lawton *v.* Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. ed. 385), and require sanitary conditions in the homes and premises of citizens even against their will. It would be preposterous then to deny the power of the State to forbid the possession by its citizens of that which is destructive of the public welfare, or its right to destroy entirely such baneful products when necessary to protect the morals, the health, and the safety of the public. As was said by Chief Justice Shaw in Commonwealth *v.* Alger, 7 Cush. (61 Mass.) 53. "All property in this commonwealth is held subject to those general regulations which are necessary to the common good and general welfare." In Reg. *v.* Vine, L. R. 10 Q. B. 195, where the question was whether the enactment that "every person convicted of felony shall forever be disqualified from selling spirits by retail" affected a person convicted of felony before the passage

of the act, Cockburn, C. J., speaking for the court, said that it did affect him, and rendered his license void. Every member of society impliedly assents that his own individual welfare, his property, his liberty, and his life shall yield to the welfare of the community, and, if necessary, shall be sacrificed to the public good. Salus populi suprema lex. We hold, therefore, that the law is not retroactive, nor is it repugnant to the constitution of Georgia, nor to the constitution of the United States for any of the reasons assigned. *Delaney* v. *Plunkett,* 146 *Ga.* 547 (91 S. E. 561).

2. All other assignments of error have been decided adversely to the contentions of the plaintiff in error in *Delaney* v. *Plunkett,* supra, and in *Bunger* v. *State,* post, 672. The evidence authorized the verdict. The cases of *Padgett* v. *Sturgis,* 6 *Ga. App.* 544 (65 S. E. 352), and *Fears* v. *State,* 102 *Ga.* 274 (29 S. E. 463), are not applicable to the facts of this case, since both of these cases were decided prior to any legislation in this State limiting the quantity of intoxicating liquors that one may lawfully possess. The court having declined to approve any of the grounds of the amended motion for a new trial, they can not be considered. *Dickens* v. *State,* 137 *Ga.* 523 (73 S. E. 826). The evidence warranted the verdict. *Judgment affirmed. All the Justices concur, except*

FISH, C. J., and ATKINSON, J., dissenting. For reasons stated in the dissenting opinion in the case of *Delaney* v. *Plunkett,* 146 *Ga.* 547 (91 S. E. 561), so much of section 16 of the act approved November 18, 1915 (Acts 1915, Ex. Sess., p. 90), as purports to inhibit the keeping on hand of liquors owned and possessed in this State, which were lawfully so owned and possessed prior to the first day of May, 1916, is violative of those provisions of the State and Federal constitutions which guarantee the right of private property and immunity from retroactive laws.

This case does not involve the constitutionality of section 20 of the act approved November 17, 1915.

This dissent does not apply to the ruling announced in the second headnote.