Ex Parte James Francis.

Opinion Filed August 13, 1918.

Petition for Rehearing Denied October 11, 1918.

Habeas Corpus—Constitutionality of Criminal Stat-
ute May Be Tested by—Chapter 7284, Laws Ap-
proved May 1st, 1917, Held To Be Unconstitutifnal
—Intoxicating Liquors—Constitutional Law.

1. An information charging in six separate counts that the
defendant:
(1) Did unlawfully transport from a County in this State
where the sale of intoxicating liquors is lawful, into a
County where such sales were prohibited by an election
held to decide such question of prohibition, two quarts of
whiskey and four quarts of wine intended for the personal
use of the defendant.
(2) The second count is a duplicate of the first count except
that it omits the allegation that the liquors transported
were intended for the personal use of the defendant.
(3) That the defendant is said County where the sale of such
intoxicating liquors had been prohibited by an election held
to establish prohibition therein did possess two quarts of
whiskey and four quarts of wine, that were received by
him from a carrier within a thirty-day period, the said
liquors so possessed being then and there intended for the
defendant's personal use.
(4) The fourth count is a duplicate of the third count except
that it omits the allegation that the liquors so possessed
were intended for the personal use of the defendant.
(5)  That the defendant did personally transport into said pro-
hibition territory for his own personal use two quarts of
whiskey and four quarts of wine.
(6) The sixth count is a duplicate of the fifth count except
that the allegation that the liquors transported were for
the defendant's own use is omitted.

*Held,* to charge no offense in any Court thereof under any valid law of this State. *Held further* that Chapter 7284 Laws approved May 1st, 1917, undertaking to penalize the acts charged against the defendant in said information is unconstitutional and void.

2. Intoxicating liquor is property that is the subject of private ownership as such, and the Legislature has no authority to prohibit its ownership, possession, transportation or personal use by the citizen either in a prohibition County or a County where prohibition is not established, ulness in either of said counties it is shown that its possession is intended for the illicit sale thereof.

Writ of Error to Circuit Court for Dade County; H. Pierre Branning, Judge.

Relator discharged from custody.

*Atkinson* & *Burdine, Bart A. Riley* and *Taylor* & *Taylor,* for Relator;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

TAYLOR, J.—James Francis, who is referred to herein as the relator, was arrested and deprived of his liberty under a capias issued by the Criminal Court of Record of Dade County from an information filed by the County Solicitor, which information charges in six separate counts as follows:

"1. Did unlawfully transport from the County of Monroe, State of Florida, into the County of Dade, State of Florida, which said County of Dade, State of Florida, had theretofore voted against the sale of intoxicating liquor, wines or beer, certain intoxicating liquors, wines

20—Vol. 76.

or beer, to-wit, two quarts of whiskey and four quarts of wine, for the personal use of said James Francis, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.

"2.  And the said Fred W. Pine, County Solicitor for the County of Dade as aforesaid, prosecuting for the State of Florida in said County, under oath, further information makes that James Francis of the County of Dade and State of Florida, on the 29th day of September, in the year of our Lord One Thousand Nine Hundred and Seventeen, in the County and State aforesaid, did transport from the County of Monroe, State of Florida, into the County of Dade, State of Florida, which said County of Dade, State of Florida, had theretofore voted against the sale of intoxicating liquor, wines or beer, certain intoxicating liquors, wines or beer, to-wit, two quarts of whiskey and four quarts of wine, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.

"3.  And the said Fred W. Pine, County Solicitor for the County of Dade as aforesaid, prosecuting for the State of Florida in said County, under oath, further information makes that James Francis of the County of Dade and State of Florida, on the 29th day of September, in the year of our Lord one thousand nine hundred and seventeen, in the County and State aforesaid, did possess intoxicating liquor, wines or beer, to-wit, two quarts of whiskey and four quarts of wine, which said liquors were received by said James Francis subsequent to May 1st, A. D. 1917, within a thirty-day period, from a carrier in the County of Dade, State of Florida, which said County of Dade, State of Florida, had theretofore voted against

the sale of intoxicating liquor, wines or beer, the said liquor so possessed being then and there intended for personal use, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.

"4. And the said Fred W. Pine, County Solicitor for the County of Dade as aforesaid, prosecuting for the State of Florida in said County, under oath, further information makes that James Francis of the County of Dade and State of Florida, on the 29th day of September, in the year of our Lord one thousand nine hundred and seventeen, in the County and State aforesaid, did possess intoxicating liquors, wine or beer, to-wit, two quarts of whiskey and four quarts of wine, which said liquors were received by said James Francis subsequent to May 1st, A. D. 1917, within a thirty-day period, from a carrier. in the County of Dade, State of Florida, which said County of Dade, State of Florida, had theretofore voted against the sale of intoxicating liquors, wines or beer, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.

"5. And the said Fred W. Pine, County Solicitor for the County of Dade as aforesaid, prosecuting for the State of Florida in said County, under oath, further information makes that James Francis of the County of Dade and State of Florida, on the 29th day of September, in the year of our Lord one thousand nine hundred and seventeen, in the County and State aforesaid, did personally transport from the County of Monroe, State of Florida, into the County of Dade, State of Florida, which said County of Dade, State of Florida, had theretofore voted against the sale of intoxicating liquor, wines or beer, for his personal use, certain intoxicating liquors,

wines or beer, to-wit, two quarts of whiskey and four quarts of wine, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.

"6. And the said Fred W. Pine, County Solicitor for the County of Dade, as aforesaid, prosecuting for the State of Florida in said County, under oath, further information makes that James Francis of the County of Dade and State of Florida, on the 29th day of September, in the year of our Lord one thousand nine hundred and seventeen, in the County and State aforesaid, did personally transport from the County of Monroe, State of Florida, into the County of Dade, State of Florida, which said County of Dade had theretofore voted against the sale of intoxicating liquor, wines or beer, certain intoxicating liquors, wines or beer, to-wit, two quarts of whiskey and four quarts of wine, contrary to the Statute in such case made and provided, and against the peace and dignity of the State of Florida."

Thereupon the relator sued out a writ of habeas corpus from the Circuit Court, the petition for the writ omitting its formal parts, being as follows:

"5. That the said imprisonment, detention, confinement, deprivation and restraint are illegal and that the illegality thereof consists in this, to-wit:

"(a) That the information filed against the petitioner herein is based upon an act passed at the 1917 session of the Florida Legislature, Chapter 7284, Laws of 1917, the title to which begins as follows, to-wit:

'An Act Prohibiting the Receipt of Intoxicating Liquors, Wines or Beer from a Common or other Carrier; Prohibiting the possession of such liquors hereafter received from a common or other carrier, and Prohibiting the Shipment and Personal Transportation of such

Liquors into Counties or Election Precincts in this State which have or may hereafter vote against the sale of such Liquors, etc.,' and that said act is void, ineffectual and inoperative because it is in conflict with the provisions of the Constitution of the State of Florida in this, to-wit, said act only applies to counties which have voted against the sale of intoxicating liquors, and permits the possession thereof in quantities exceeding one quart in counties wherein the sale of intoxicating liquors is authorized, thereby discriminating between the citizens possessing intoxicating liquors in wet counties and those possessing intoxicating liquors in dry counties.

"(b)    That said act is in conflict with the Constitution of the State of Florida, in this to-wit: that it makes it unlawful for a person to personally transport from without or within the State of Florida into dry counties exceeding the quantity of one quart of intoxicating liquors or wine during any period of thirty consecutive days, while it allows a person to transport into a wet county of the State of Florida more than one quart in thirty days, of intoxicating wine or beer.

"(c)    That said act is in conflict with the provisions of the Florida Constitution in this to-wit: that it makes it unlawful for any person residing in a dry county to receive directly or indirectly from a common or other carrier, intoxicating liquors, wine or beer exceeding the quantity of one quart during any period of thirty consecutive days, while a person in a wet county in the State of Florida may receive more than one quart of intoxicating liquor or wine during any period of thirty consecutive days.

"(d)    That the said statute is in conflict with the provisions of the Constitution of the State of Florida in this to-wit: That it makes it unlawful for any car-

rier or person to ship or transport into dry counties intoxicating liquors, wines or beers exceeding one quart of intoxicating liquor or wine during any period of thirty consecutive days, while a carrier or person is allowed to ship, or transport more than said amount of intoxicating liquors, wines or beer into a wet county.

"(e)   That said law is unconstitutional in this to-wit: That it makes it unlawful for any person in a dry county of the State of Florida to receive, possess, ship or transport into said county for his personal use exceeding one quart of intoxicating liquor or wine during any period of thirty consecutive days, while it permits citizens of wet counties to receive, possess, ship or transport into such wet counties intoxicating liquor or wine in excess of said one quart during any period of thirty consecutive days.

"(f)   That said law, as indicated in sub-heads a to e of this petition, is in direct conflict with Section 20 of Article 3 of the Constitution of the State of Florida, which prohibits the passage of special or local laws for the punishment of crime or misdemeanor.

"(g)   That that portion of the Constitution of the State of Florida which provides for the holding of an election to determine whether or not intoxicating liquors, wines or beers shall be prohibited, does not authorize or empower the people of any community or municipality to call an election for the purpose of determining whether or not non-intoxicating liquors shall be received, possessed, shipped or transported into wet counties for personal use.

(h)   That Sections 1, 2, 3, and 4 of said act are in violation of Sections 1 and 12 of the Declaration of Rights of the Constitution of the State of Florida, and in violation of Section 16 of Article 3 of the Constitution

of the State of Florida, and in violation of Article 19 of the Constitution of the State of Florida.

"(i)    That the people of Dade County, Florida, have voted against the sale of intoxicating liquors, but have not voted against the possession of intoxicating liquors for personal use.

"(j)    That no election has been called or held in Dade County, Florida, since the passage of the Act above referred to, prohibiting the possession for personal use of intoxicating liquors in said Dade County.

"(k)    That said act seeks to cancel and terminate the ownership of private individuals in intoxicating liquors without compensating them for the loss thereby sustained.

"(l)    That said act is of such a nature and character that it cannot be sustained or upheld under the police powers of the State in that it is not applicable to the entire State of Florida or to all the people of the State of Florida.

"(m)    That said act is void as an unjustified abridgement of the privileges and immunities of the citizens in a dry county.

"(n)    The Legislature under the police powers has no right to forbid the possession of intoxicating liquors in a county voting against the sale of intoxicating liquors, when such liquors are possessed for personal use.

"(o)    The Legislature has no power under Article 19 to pass laws forbidding the possession of intoxicating liquors in counties voting against the sale thereof unless said liquor is possessed for the purpose of illegal sale.

"(p)    The prohibition of the possession of more than one quart of intoxicating liquors or wines in any period of thirty consecutive days is unconstitutional because it is unreasonable and arbitrary.

"(q)　The prohibition against the keeping, receiving or possessing of intoxicating liquors in se is not a legitimate exercise of the police power.

"(r)　The seizure under the statute and the destruction thereunder are in contravention of the constitutional rights that one's property shall not be taken without due process of law.

"(s)　The said act is violative of the Fourteenth Amendment to the Constitution of the United States.

"(t)　That said act is unreasonable because the mere possession of intoxicating liquor kept for one's own use is not inherently injurious to the health, morals or safety of the public, and therefore such legislation prohibiting the keeping in excess of one quart is not a legitimate exercise of the police power.

"(u)　That said act is a violation not only of the constitutional rights of the petitioner but of his inherent rights.

"(v)　The said law is unconstitutional because in the absence of any unlawful intent to dispose thereof, it makes the possession of more than one quart of intoxicating liquor or wine in any period of thirty consecutive days, unlawful."

At the hearing before the Circuit Judge, he made an order remanding the relator to the custody and dismissed his petition for the writ. For review of this judgment writ of error from this court was allowed and issued.

The case presents the question of the constitutionality of Chapter 7284, Laws approved May 1st, 1917.

In short, this act undertakes to prohibit under penalties the possession or ownership by any citizen in slang-called "dry" counties and territory during any period of thirty days exceeding one quart of spirituous or vinous liquors and six quarts of malt liquors for their own per-

sonal use or otherwise, while it permits citizens in so-called "wet" counties and territory to possess and own as much liquor of all kinds as they see fit. The act further undertakes to prohibit under penalties the receipt in such dry territory from any carrier, public or private, of any such liquors exceeding such limited amount during any period of thirty days, and further prohibits under penalties the carriage by any citizen personally into any such dry territory during any period of thirty days any such liquors exceeding such limited amount whether for his own personal use or otherwise; and the act further provides for the summary seizure, confiscation and destruction of any such liquors found in the possession of anyone in such dry territory exceeding such limited amount, whether possessed or owned for the personal use of the possessor or owner thereof or otherwise.

We have no hesitation in saying that the features of this act above mentioned are clearly violative of Section 1 of the Declaration of Rights of our Constitution, that provides as follows:

"All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety."

And it is also violative of Sections 1 and 2 of Article XIX of our Constitution.

That intoxicating liquor is property that is the subject of private ownership, there is no question. Our Constitution, Article XIX, recognizes it as such; and indeed the act of our Legislature under discussion recognizes it as such in permitting it to be brought into the dry territory in the limited quantities it provides, and in the unlimited quantities it permits to be brought into such ter-

ritory for druggist, hospitals, ministers for sacramental purposes, etc., and yet this act in the teeth of our Declaration of Rights undertakes to prohibit one part of our citizenship who happen to reside in dry territory from harmlessly acquiring, possessing and protecting this property for his own personal and private use.

In Joyce on Intoxicating Liquors, Sec. 79, it is said: "A constitutional provision that 'laws may be passed regulating or prohibiting the sale of intoxicating liquors is held to impose a restraint upon the plenary and unrestricted power of a Legislature to deal with the subject of such liquors in any manner it chooses to. In such a case it is declared that the purpose and effect of the provision is to restrict and limit the legislative authority to the powers expressly granted therein, that is to the power to regulate and prohibit the *sale,* the rule being said to be simply an application of the *maxim expressio unius est exclusio alterius."*

Section 1 of Article XIX of our Constitution reserves to the people the right by their direct vote to prohibit the *sale* only of intoxicating liquors, not their ownership, possession or individual use by the citizen, and by the second Section of the Article the Legislature is expressly authorized and required to enact laws to carry out the provisions of Section one, that is to enforce the prohibition against the *sale.* And when the Legislature goes outside of the realm of law aimed at prohibiting the unlawful sale of such liquors, by inhibiting their private ownership, possession or personal use it transcends its authority under the Constitution and its act is void.

In 15 R. C. L., Sec. 19, it is said: "Generally speaking, it is the traffic and not the liquor itself which is subject to the police power; and the property right, the privilege of the individual to acquire and use liquors to satisfy

his own personal tastes and appetites should remain inviolate. It has been held generally that the mere possession and use for such purposes are not inherently injurious to the health, morals, or safety of the public; and, therefore, that legislation prohibiting such acts is not a legitimate exercise of police power, but, on the contrary, is an abridgement of the privileges and immunities of the citizen without any legal justification, and, as such, void." *Ex parte* Brown, 38 Tex. Cr. Rep. 295, 42 S. W. Rep. 554, 70 Am. St. Rep. 743; Town of Courtland v. Larson, 273 Ill. 602, 113 N. E. Rep. 51; Fears v. State, 102 Ga. 274, 29 S. E. Rep. 463; Henderson v. Heyward, 109 Ga. 373, 34 S. E. Rep. 590, 47 L. R. A. 366; Steele v. State, 19 Tex. App. 425; Stallworth v. State, 16 Tex. App. 345, Holley v. State, 14 Tex. App. 505.

We commend to our legislators especially the 9th and 10th headnotes to the case of Sullivan v. City of Oneida, 61 Ill. 242; Preston v. Drew, 33 Me. 558, 54 Am. Dec. 639; State v. Williams, 146 N. C. 618, 61 S. E. Rep. 61, 14 Ann. Cas, 562; Ninenger v. State, 25 Tex. App. 449; Titsworth v. State, 2 Okla. Cr. Rep. 268, 101 Pac. Rep. 288; Adams Express Co. v. Commonwealth, 154 Ky. 462, 157 S. W. Rep. 908, 48 L. R. A. (N. S.) 342; Commonwealth v. Campbell, 133 Ky. 50, 117 S. W. Rep. 383, 19 Ann. Cas. 159; City of Shreveport v. Hill, 134 La. 352, 64 South. Rep. 137, 39 Ann. Cas. 283; Eidge v. City of Bessemer, 164 Ala. 599, 51 South. Rep. 246; State of West Virginia v. Gilman, 33 W. Va. 146, 10 S. E. Rep. 283, 6 L. R. A. 847; State v. McIntyre, 139 N. C. 599, 52 S. E. Rep. 63; *Ex parte* Luera, 28 Cal. App. 185, 152 Pac. Rep. 738.

Since the information in this case charges that the defendant received in dry territory the forbidden quantity of liquor for his own personal use and not for sale or any other lawfully interdicted purpose, it follows that the de-

fendant or relator is held in custody without authority of law, and should be and is hereby discharged from custody at the cost of the State.

BROWNE, C. J., AND ELLIS, J., concur.

WHITFIELD AND WEST, J. J., dissent.

BROWNE, C. J., *concurring.*—I fully concur in the decision in this case. I am also quite convinced that the Act is obnoxious to Section 20, Article III of the Constitution, which provides that "The Legislature shall not pass special or local laws in any of the following enumerated cases: * * * for the punishment of crime or misdemeanor," etc. Chapter 7284 is a local law, and is effective in some counties and not in others. The fact that it is operative in all but four, does not make it less a local law, than if, as might be, it were operative in only one. It is also an act for the punishment of crime. It declares certain acts to be unlawful and for any violation of its provisions a fine of not less than fifty nor more than five hundred dollars, or imprisonment in county jail for not more than six months or both fine and imprisonment may be imposed.

It conflicts with the quoted provision of the Constitution, and under the decision of this court in Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548, is unconstitutional and void.

The discrimination made by this act between the quantity of intoxicating liquors a person may have for his own use in the different counties of the State, finds no justification either in the Constitution or in a valid exercise of the State's police power. Some courts have held that limiting the quantity of intoxicating liquors a person

may have in his possession is an exercise of police power to protect the individual from himself and his uncontrollable appetite; but that is not the purpose of this act. It does not limit the quantity of liquor *every* person in the State may have in his possession for his own use, nor does it prohibit carriers from delivering to them liquor in any quantity. A carrier may transport an unlimited quantity of intoxicating liquors for some person and they may have it in their possession for their own use in some counties, but not in others; in Escambia County for instance, but not in the adjoining county of Santa Rosa. Can it be contended that a person neels protection from himself in Santa Rosa County but not in Escambia County? Clearly not. Then why did not the Legislature prohibit its possession in all the counties of the State?

The attempt to find justification for the discrimination between persons in different counties, or the same person in different counties, by the provisions of Article XIX of the Constitution, is futile, as that Article relates only to the prohibition of the *sale* of intoxicants. That is the sole question submitted to the people, and when the Legislature says that upon the people of a county voting against the sale of intoxicating liquor, the ownership and possession of more than a stated quantity "for personal use" shall also be prohibited, it attempts to amend the Constitution by legislative enactment.

It is true this court held that the Legislature in enforcing the provisions of Article XIX may prohibit the sale of intoxicating beverages in imitation of, or intended as substitutes for certain intoxicating liquors, because their sale may be used as a cover to violation of the law against the sale of intoxicating liquors. Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533. I did not concur in that decision, but I see a very clear distinction between

the two statutes.   Here the law in express terms restricts
the possession of more than a stated quantity, "whether
intended for personal use or otherwise." The very words
"for personal use or otherwise" precludes the idea that
the prohibition of the possession for personal use of more ·
than a quart of liquor and six quarts of malt beverages,
was intended as a means of enforcing the law against
the sale of intoxicants.   The words, "whether intended
for personal use or otherwise" are used in the title, and
repeated in the first, second, third and fourth sections
of the Act.   In the fifth section, as if to make it clearer
that the statute was directed at *the personal use,* and not
at the possession for sale or other unlawful purpose, these
words are used: "for personal use of such person, or for
the use of members of his family residing with him." It
is possible that the possession of a large quantity  of
liquors under certain circumstances may be prohibited as
a means of preventing its illegal sale, but if that had
been the purpose of this act, such possession would have
been prohibited to all persons and in all counties of the
State, because illegal sales may occur in counties where
the sale is permitted as well as in those where it is pro-
hibited.

The words "for personal use," and the fact that the
prohibition of the possession of more than a stated quan-
tity, affects persons in some counties and not in others,
show clearly that the purpose of this provision was to
limit individual use, and not to limit the possession be-
cause it could be made a cover for violation of laws
against their sale.

WHITFIELD, J., *dissenting.*—The Georgia and Illinois
decisions relied on by the court as authority relate to
the powers of municipalities. The others do not appear

to be controlling in view of recent adjudicated cases in the highest State and Federal Courts.

Courts may determine whether a statute conflicts with organic law, but only questions of legislative power are considered. Questions of wisdom, policy, reasonableness, necessity or expediency are foreclosed by the legislative will constitutionally expressed. An act of the Legislature prescribing police regulations, when attacked on constitutional grounds, should not be declared to be inoperative unless it clearly and inevitably violates some provision of organic law. McNeil v. Webeking, 66 Fla. 407, 63 South. Rep. 728; Ex parte Pricha, 70 Fla. 265, 70 South. Rep. 406; City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769; State v. Duval County, decided this term; Purity Extract and Tonic Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. Rep. 44; Blount v. Simmons, 120 N. C. 19, 26 S. E. Rep. 649; 54 Fla, 163; 67 Fla. 370.

All property rights are subject to lawful governmental regulations under the police power of the State to conserve the peace, health, safety, morals and general welfare of the people. State ex rel. Simpson v. Ackerly, 69 Fla. 23, 67 South. Rep. 232; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Crowley v. Cristensen, 137 U. S. 86, text 89, 11 Sup. Ct. Rep. 13; 6 R. C. L. 193; 12 C. J. 947; Cureton v. State, 135 Ga. 660, 70 S. E. Rep. 332; Preston v. Drew, 33 Me. 558; State of West Virginia v. Adams Exp. Co., 219 Fed. Rep. 794, 135 C. C. A. 464; Barbour v. State, 146 Ga. 667, 92 S. E. Rep. 70; Joyce on Intoxicating Liquors, Sec. 80; New York Health Department v. Rector, etc., Trinity Church, 145 N. Y. 32, 39 N. E. Rep. 833.

The police power is governmental authority to regulate personal conduct and personal property rights for the general welfare. This power is inherent in sovereign

governments.  Limitations of this authority in America are found in the organic guarantees of personal and property· rights.  Duly prescribed regulations of the use of· property ·that are appropriate to conserve the public good and are not mere arbitrary or needless encroachments upon private rights, do not deprive any one of property without due process of law, nor are such regulations a taking of property that requires compensation, since all private rights, though secured by the Constitution, are, under the police power of the State, subject to regulations that restrict the enjoyment of such rights to promote the public good. 239 U. S. 394.  This principle applies to the right to acquire, possess, and protect property as well 'as to' the right to enjoy and defend liberty and to obtain safety.

When the use of property is only appropriately regulated under the police power for the public good, there is no deprivation or taking of property within the inhibition of the Constitution, State or Federal, even though such regulations may circumscribe the use of property. Regulations predicated upon substantial differences in property and its uses as they affect the general welfare do not deny equal protection of the laws in violation of the Constitution, where classes of persons similarly situated or conditioned with reference to the subject regulated are not arbitrarily discriminated against by the regulations.  The organic guarantees of equal rights and equal protection of the laws require substantial, not exact, equality in appropriate regulations under the police power of the State. 199 U. S. 325; 232 U. S. 700; 97 U. S. 25.

Property rights in harmful and dangerous articles are not the same as those in harmless and useful articles. The difference in the rights has a basis in the necessity

for the protection and security of individuals and communities. Where the unrestricted use of any species of property is dangerous or injurious to the welfare of the people, severally or in the aggregate, governmental regulation of the use of such property does not violate organic property rights, since all property is held and enjoyed subject to lawful regulation for the public good. The people of this country regard the unrestricted use of intoxicating liquors as being seriously detrimental to the health, peace, morals, safety and general welfare of the people individually and collectively. This affords a proper basis for the exercise of the police power of the State in a matter that is peculiarly within its province. 245 U. S. 304; 170 S. W. Rep. 749; 123 U. S. 623; 151 Pac. Rep. 1006; 242 U. S. 311, 332.

It is obvious that the improper or excessive use of intoxicating liquor is regarded by the law-making power of the State as being an evil that is detrimental to the general welfare. Under the police power of the State the use of such liquors may be regulated to avoid the recognized evil; and any means that are appropriate to the desired end may be adopted within the discretion of the lawmaking power. Where regulations or prohibitions of *traffic* in such liquors are inadequate to accomplish the desired result of limited and proper use, the Legislature may regulate the quantities that a person may transport or have in his possession, with a view of remedying the evil that flows from the improper or excessive use of intoxicating liquor. Such regulations do not abridge the privileges or immunities of citizens of the United States, or deprive any person of property without due process of law, or deny to any one the equal protection of the laws, in violation of the Federal Constitution, (245 U. S. 304) even though the use of pri-

vate property is thereby circumscribed, since all personal and property rights are subject to appropriate governmental regulation for the public good. 238 U. S. 67.

Under the Fourteenth Amendment of the Federal Constitution citizens of the United States are citizens of the State in which they reside; and where appropriate regulations by the State restricting the possession and transportation of intoxicating liquors do not abridge the rights of citizens of the United States under the Federal Constitution, such regulations certainly do not abridge the rights of citizens of the State who are also citizens of the United States. The guarantee under the State Constitution that all men are equal before the law and have inalienable rights to acquire, possess and protect property, do not so differ from the rights secured by the Federal organic law as to make individual rights in the use of intoxicating liquors superior to the State organic right of the public to have governmental regulations "for the protection, security and benefit of the citizens" of the State. Regulations "for the protection, security and benefit of the citizens" of the State are certainly "for the protection, security and benefit of the" public or of the people of the State.

There are no such fundamental rights of intoxicating liquors that they may not be regulated for the public good. 167 N. W. Rep. 400.

Every provision of organic law should be given its intended effect. One organic provision may qaulify abstract rights secured by other organic provisions. The rights secured by Section 1 of the Declaration of Rights of the State Constitution are to be construed with reference to the provisions of Section 2 thereof, that governmental power is inherent in the people and may be exerted for the protection, security and benefit of the

citizens. State v. Cummins, 165 Pac. Rep. 216; 172 Pac. Rep. 1050. Under our system of government all property rights are subject to regulation. The governmental power reserved to the people extends to all matters not forbidden by organic law.

Nothing in the Constitution gives unrestricted rights in intoxicating liquors, but all rights therein, as in other property having peculiarly harmful qualities, are subject to regulation for the general welfare.

In the absence of controlling organic provisions, statuaory regulations are the law of the land. Iudividual opinions must yield to the mandates of the law. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare. 123 U. S. 653; 165 Pac. Rep. 1177.

The right of "acquiring, possessing and protecting property" is declared by Section 1, Declaration of Rights, to be "inalienable," that is, not transferrable to another. This right is not absolute as against the collective rights of organized society as represented by a sovereign government. The organic right to acquire, possess and protect property does not confer or secure an unrestricted right to possess and to transport intoxicating liquors, a class of property the improper or excessive use of which is regarded by the law-making power of the State and by dominant public opinion as being detrimental to the health, peace ,morals, safety and general welfare of the people; and personal and property rights in such liquors are subject to legislative regulation for the public good under the police power of the State, whose "government is instituted for the protection, security and benefit of the citizens," as expressly declared by Section 2, Declaration of Rights. Lawful regulations of the possession, transportation or use of property, the unrestricted use

of which the law-making power regards as not being conductive to the general welfare or "for the protection, security and benefit of the citizens" of the State, do not "deprive" any person of property without due process of law, nor is property thereby "taken" in violation of Section 12, Declaration of Rights.

The organic provisions declaring that "all men are equal before the law" and securing to all persons "the equal protection of the laws," relate to arbitrary discriminations and to oppressive exercise of governmental power against persons or classes of persons, and do not forbid discriminatory regulations of different species of property that affect alike all persons similarly situated with reference to the subject and the regulations. The exemptions provided for in Section 5 of Chapter 7284, Acts of 1917, are not unlawful discriminations. 88 Atl. Rep. 579; 91 Atl. Rep. 385; 232 U. S. 700; 128 U. S. 1; See Thiesen v. McDavid, 34 Fla. 440, 16 South. Rep. 321; 220 U. S. 61; 240 U. S. 342; 238 U. S. 446; 236 U. S. 373; 67 Fla. 370; 68 Fla. 1; 70 Fla. 340; 61 Fla. 376.

Article XIX of the State Constitution is as follows:

## "ARTICLE XIX.

### "LOCAL OPTION.

"Section 1. The Board of County Commissioners of each county in the State, not oftener than once in every two years, upon the application of one-fourth of the registered voters of any county, shall call and provide for an election in the county in which application is made, to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote of those voting at the election called under this section, which election shall be

conducted in the manner prescribed by law for holding general elections; provided, that intoxicating liquors, either spirituous, vinous or malt, shall not be sold in any election district in which a majority vote was cast against the same at the said election. Elections under this section shall be held within sixty days from the time of presenting said application, but if any such election should thereby take place within sixty days of any State or National election, it shall be held within sixty days, after any such State or National election.

"Section 2. The Legislature shall provide necessary laws to carry out and enforce the provisions of Section one of this article."

This article is not a grant of power to the Legislature; but it is a limitation upon the general law-making power of the Legislature in a single particular. It prescribes local option provisions for determining "whether the sale of intoxicating liquors, wines or beer shall be prohibited" in the different counties of the State, and requires the Legislature to enact laws to make the article effective. If the rule *expressio unius exclusio alterius* be applied to Article XIX, it would not restrict a grant of power, but would restrain a limitation upon the law-making power of the Legislature, which limitation in any event should not be extended beyond the intent shown by the language used. Article XIX does not restrain the general law-making power of the Legislature except as to the method of effectuating prohibition of the sale of intoxicating liquors, wines or beer. All other matters affecting such intoxicants are left for legislative regulation, with a mandate contained in Section 2, Article XIX, that "the Legislature shall provide necessary laws to carry out and enforce the provisions of" the

article. See State v. Brown (S. Dak.), 167 N. W. Rep. 400.

Article XIX of the State Constitution, in recognition of the evils that are peculiar to the traffic in intoxicating liquors, provides a means for prohibiting *the sale* of such liquors in every county of the State; and the Legislature, recognizing the evils that are peculiar to the possession, transportation or use of intoxicating liquors, has provided regulations of such transportation and possession in counties where *the sale* of such liquors is made unlawful under Article XIX of the Constitution, the regulations not being operative in counties where *the sale* of intoxicating liquors is lawful. These regulations supplement but *do not conflict with* the operation of Article XIX in counties where *the sale* of intoxicating liquors is made unlawful. Article XIX does not by implication limit the legislative power to regulate the transportation and possession of intoxicating liquors in dry counties. See Van Pelt v. Hilliard, 75 Fla. 792, 78 South. Rep. 693.

Regulations limiting the quantity of intoxicating liquors that may be transported or had in possession, thereby preventing opportunities for unlawful sales, may tend to make effective the provisions of Article XIX in counties where the sale of intoxicating liquors is unlawful, pursuant to the requirements of Section 2, Article XIX, that "the Legislature shall provide necessary laws to carry out and enforce the provisions of Section one of this Article." 77 South. Rep. 533. Such regulations do tend to curtail the evils consequent upon the excessive or improper use of intoxicating liquors, in the interest of peace, health, morals, safety and the general welfare "for the protection, security and benefit of the citizens" of the State, as contemplated by the quoted declaration

of the Constitution. The quantity, as well as any other feature of the use of intoxicating liquors, may be regulated by statute in the interest of the common good. The reasonableness of the quantity designated by the statute is not subject to judicial review.

While regulations as to the possession and transportation of intoxicating liquors in counties where the sale thereof is unlawful, may contribute towards making the prohibition of sales under Article XIX effective, that Article of the Constitution does not relate to the possession or transportation, but only to *the sale* of intoxicating liquors. There being no express or implied organic limitations on the subject, the Legislature has full power to regulate by due course of law the possession and transportation of intoxicating liquors in counties where the sale thereof is unlawful, when the regulations are appropriate to the object and no class of persons is thereby arbitrarily discriminated against, and property is not thereby unlawfully "taken." The due process of law and just compensation provisions of the organic law may not be violated when property rights are forfeited through violation of law. 123 U. S. 623.

A legislative determination of a proper subject for the exercise of the police power, and of the manner of the exercise, by enacting regulations covering the matter, should not be disturbed by the courts, unless clearly some mandate of the Constitution is thereby inevitably violated. See Louisville & N. R. Co. v. State of Kentucky, 161 U. S. 677, 16 Sup. Ct. Rep. 714; 234 U. S. 199, 224; 233 U. S. 642; 68 Fla. 1; 67 Fla. 370.

The provisions of Chapter 7284, Acts of 1917, here considered, are as follows:

"Section 1. That it shall be unlawful for any person, firm or corporation to receive, directly or indirectly,

intoxicating liquors, wines or beer, from a common or other carrier, in counties or election precincts within this State which have or may hereafter vote against the sale of intoxicating liquors, wines or beer, in such county or election precinct, whether intended for personal use or otherwise, and whether interstate or intrastate shipments or transportation, except as hereinafter provided.

"Sec. 2. That it shall be unlawful for any person, firm or corporation to possess intoxicating liquors, wines or beer, hereafter received, directly or indirectly, from a common or other carrier in the counties or election precincts of this State which have or may hereafter vote against the sale of intoxicating liquors, wines or beer in such county or election precinct whether intended for personal use or otherwise and whether interstate or intrastate shipments or transportation, except as hereinafter provided.

"Sec. 3. That it shall be unlawful for any express company, railroad company, or any common carrier or person to ship or transport into the counties or election precincts of this State which have or may hereafter vote against the sale of intoxicating liquors, wines or beer in such county or election precinct, any intoxicating liquors, wines or beer, or from a place in this State to any county or election precinct in this State which has or may hereafter vote against the sale of such liquors, in such county or election precinct, any intoxicating liquors, wines or beer for any person, firm, club, association or corporation, whether in original packages or otherwise, and whether intended for personal use or otherwise, except as hereinafter provided.

"Sec. 4. That it shall be unlawful for any person to personally transport from without or within this State

into counties or election precincts in this State which have or may hereafter vote against the sale of intoxicating liquors, wines or beer, whether the same is intended for personal use or otherwise, any intoxicating liquors, wines or beer in any quantity whatsoever, except as hereinafter provided.

"Sec. 5. That nothing in this Act shall make it unlawful: (1) For druggists to receive and possess alcohol and other intoxicating liquors and such preparations as may be sold by druggists for the special purpose and in the manner as now or hereafter provided by law, or the manufacturers of medicines that conform to the provisions of the Pure Food and Drug Act of this State and the United States, or for *bona fide* hospitals, or for manufacturers of perfumery and toilet articles to receive and possess alcohol, for the use of *bona fide* patients of such hospitals, or in the manufacturing of such medicines, or flavoring extracts, or perfumery and toilet articles or for any common or other carrier to ship or transport such liquor or alcohol for said purposes to such druggists or hospitals, or manufacturers of medicines, or of flavoring extracts, or of perfumery or of toilet articles in the counties of this State which have or may hereafter vote against the sale of intoxicating liquors, wines or beer; provided that such consignee or addressee or his or its duly authorized agent shall at the time of delivery to him of said alcohol or liquors make an affidavit and deliver to such common or other carrier that such alcohol or liquors is ordered for and will be used for the purposes specified herein, and he shall in such affidavit name the purpose of those specified herein for which same will be used and that it will be used for no other purpose.

(2)   For any person for the use of himself or for the use of his own family residing with him, to personally transport to his own home, or to possess or to receive from any common or other carrier, shipped from without the counties or election precincts which have or may hereafter vote against the sale of intoxicating liquors, wines or beer, not exceeding one quart of intoxicating liquor or wine and not exceeding six quarts of beer or malt where said beer or malt does not contain more than five per centum of alcohol during any period of thirty consecutive days, or for any common or other carrier to ship or transport to any person in any county or election precinct in this State which has or may hereafter vote against the sale of intoxicating liquors, wines or beer for the personal use of such person, or for the use of the members of his family residing with him, not exceeding one quart of intoxicating liquor or wine and not exceeding six quarts of beer or malt where said beer or malt does not contain more than five per centum of alcohol during any period of thirty consecutive days.

(3)   For any priest or minister of any religious denomination or sect to receive and possess wines, for sacramental purposes, or for any common carrier, or other carrier, to ship or transport for said purposes to any priest or minister of any religious denomination or sect.

(4)   For any person, firm or corporation to receive and possess alcohol to be used in chemical laboratories for scientific purposes, or for any common carrier or other carrier to ship, transport and deliver for said purposes to any peson, firm or corporation.

"Sec. 7.   That any person, firm, club, association or corporation and or the agent or agents, employee or employees of either violating any of the provisions of this Act, shall, upon conviction, be fined not less than fifty

dollars nor more than five hundred dollars, or be imprisoned in the county jail for a period of time not more than six months or by both fine and imprisonment."

Chapter 7284, Acts of 1917, is a general law applicable to every county in the State in which the sale of intoxicating liquors, wines or beer is duly forbidden under Article XIX of the Constitution; it is, therefore, not in conflict with Sections 20 and 21 of Article III of the Constitution, forbidding the enactment of "special or local laws" for the punishment of crime or misdemeanor." Ex parte Crane, 27 Idaho 671, 151 Pac. Rep. 1006; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Fine v. Moran, *supra; Ex parte* Wells, 21 Fla. 280; Randall v. Tillis, 43 Fla. 43, 29 South. Rep. 540; Collier v. Cassady, 63 Fla. 390, 57 South. Rep. 617.

An Act of the Legislature relating to counties of a certain class, general in its terms and founded upon a proper and legitimate basis of classification, is general and not special legislation, though but a single county is embraced within the class affected by the legislation. Givins v. County of Hillsborough, 46 Fla. 502, 35 South. Rep. 88. The classification here has basis in Article XIX of the Constitution. See Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533.

A statute is a general law if it is potentially applicable to every county in the State, though at the time of its passage it applies to only some of the counties. Collier v. Cassaday, 63 Fla. 390.

Though the sale of intoxicating liquors may not be unlawful in all the counties of the State, such sales may under Article XIX be made unlawful in all the counties, and Chapter 7284 is uniform in its application to "counties or election precincts within this State which have or may hereafter vote against the sale of intoxicating

liquors;" therefore the Act is a general law since by its terms it is potentially applicable to all the counties and election districts of the State, and it applies uniformly to the condition calling for its enactment. 242 U. S. 311; 63 Fla. 390; 77 South. Rep. 533; 43 Fla. 43.

Even if Chapter 7284 may be regarded as a "special or local law" within the provisions of Section 20 of Article III of the Constitution forbidding "special or local laws" "for the punishment of crime or misdemeanor," the section of the chapter prescribing the punishment may be eliminated and the remainder will be operative under the express provisions of Section 14 of the Act, "That if, for any reason, any section or part of this Act shall be held unconstitutional or invalid, then that fact shall not invalidate any other part of this Act, but the same shall be enforced without reference to the part so held to be invalid." Punishment in such cases is provided for in Chapter 6222, Acts of 1911, a general law. See Stinson v. State, 63 Fla. 42, 58 South. Rep. 722; Douglas v. Smith, 66 Fla. 460, 63 South. Rep. 844; Fine v. Moran, *supra.* In Snowden v. Brown, 60 Fla. 212, 53 South. Rep. 548, the penalty section of a local statute was eliminated, leaving the remainder of the statute in force, though there was then no general law providing a penalty as in the later cases of Stinson v. State, and Douglas v. Smith, *supra.* See Fine v. Moran, *supra.*

The Constitution does not limit the power of the Legislature to regulate the transportation and possession of intoxicating liquors, wines or beer in dry counties; and the improper or excessive use of intoxicating liquors, wines or beer being regarded as detrimental to the public welfare, the Legislature in the light of adjudged cases, has the power to enact the provisions of Chapter 7284, Acts of 1917, regulating the quantity of intoxicating

liquors, wines or beer that a person may transport or have in his possession within a given time, in counties where the sale of intoxicating liquors is unlawful, without violating the Fourteenth Amendment of the Federal Constitution or the State organic right of "acquiring, possessing and protecting property," or Article XIX of the State Constitution. The statute has appropriate relation to a purpose within the police power of the State; it does not arbitrarily discriminate (88 Atl. Rep. 579; 91 Atl. Rep. 385) ; and interstate commerce is not unlawfully involved. See Southern Express Co. v. Whittle, 194 Ala. 446, 69 South. Rep. 652, L. R. A. 1916C, 278; Southern Express Co. v. State, 188 Ala. 454, 66 South. Rep. 115; Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, Sup. Ct. Rep. ; State v. Certain Intoxicating Liquors, Utah , 172 Pac. Rep. 1050; State v. Phillips, 109 Miss. 22, 67 South. Rep. 651; Delaney v. Plunkett, 146 Ga. 547, 91 S. E. Rep. 561, Ann. Cas. 1917E, 685, L. R. A. (N. S.) 1917D, 926; Barbour v. State, 146 Ga. 667, 92 S. E. Rep. 70; Glenn v. Southern Express Co., 170 N. C. 286, 87 S. E. Rep. 136, L. R. A. 1918B, 438; U. S. , State v. Carpenter, 173 N. C. 767; In Re Crane, 27 Idaho 671, 151 Pac. Rep. 1006, L. R. A. 1918 A, 942; Crane v. Campbell, 245 U. S. 304, 38 Sup. Ct. Rep. 98; State v. Brown, S. D. , 167 N. W. Rep. 400; Fitch v. State, Neb. , 167 N. W. Rep. 417; Kunsburg v. State, Ga. , 95 S. E. Rep. 12; Claunch v. State, Tex. Cr. App. , 199 S. W. Rep. 483; City of Delta v. Charlesworth, Colo. , 170 Pac. Rep. 695; State v. Fabri, Wash. , 167 Pac. Rep. 133, L. R. A. (N. S.) 1918A, 416; Seaboard Air Line Ry. v. State of North Carolina, 245 U. S. 298, Sup. Ct. Rep. ; State v. Missouri Pac. R. Co., 96 Kan. 609, 152 Pac. Rep. 777, Ann. Cas. 1917A 612; Kansas City v. Jordan, 90

Kan. 814, 163 Pac. Rep. 188, Ann. Cas. 1918B, 273;
O'Rear v. State,     Ala. App.   , 72 South. Rep. 505;
State v. Sixo, 77 W. Va. 243, 87 S. E. Rep. 267; 219 Fed.
Rep. 794; 165 Pac. Rep. 1177; 194 U. S. 445; 232 U. S.
700; 34 Fla. 440, 448; 38 Sup. Ct. Rep. 298; 210 Fed. Rep.
378; 169 Pac. 172; 198 S. W. 77; 93 S. E. Rep. 198; 167
Pac. Rep. 940, 205 S. W. (Rep. (Tenn.) 423.

The rule enacted in Section 14 of Chapter 7284 would
give effect to the provisions contained in Sections 1, 2,
3 and 4 of the Act, even if any portion or all of Section
5, or any other portion of the statute, should be held to
be inoperative, since in view of the positive language of
Section 14 of the Act it cannot be said the Legislature
would not have enacted Sections 1, 2, 3 and 4 without
any other provision, no matter which one, of the Act
that may be held to be inoperative. See 54 Fla. 163; 63
Fla. 337; 32 Fla. 545.

The enacting clause is in the language required by the
Constitution, and it is assumed that the constitutional
requirements as to title and enactment were complied
with.

Where a statute contains the rule expressly enacted
in Section 14 of this Act, as set out herein, the judicial
rule of construction announced in 50 Fla. 127; 55 Fla.
246; 184 U. S. 540, is not permissible. The judicial rule
is that where the elimination of an unconstitutional por-
tion of a statute will cause material results not intended
by the Legislature, the entire Act fails. This rule may
be excluded by express provision contained in an enacted
law. 107 Miss. 528, 65 South. Rep. 575, Ann. Cas. 1916D,
127. The rule enacted in the statute itself precludes the
application of the judicial rule, which, if applied in vio-
lation of the statute, would not prevent, but would it-
self cause material results not intended by the Legisla-

ture and the application of the judicial rule would frustrate the definitely expressed legislative intent which is the essence óf the law; 67 Fla. 499; and it is the duty of the courts in appropriate proceedings duly taken to give effect to the law-making intent. 60 Fla. 389; 70 Fla. 55; Ann. Cas. 1916D, page 9 notes.

Among the amendments to the Federal Constitution are:

(Article IX).

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

(Article X).

"The powers not delegated to the United States by the Constitution, nor prohibited .by it to the States, are reserved to the States respectively, or to the people."

The provision of Section 1, Declaration of Rights of the State Constitution, that "all men * * have the inalienable right * * of acquiring, possessing and protecting property" is immediately followed by the equally positive declaration in Section 2, that "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the citizens, and they have the right to alter or amend the same whenever the public good may require it; but the paramount allegiance of every citizen is due to the Federal Government, and the people of this State have no power to dissolve its connection therewith."

These organic declarations recognize and preserve the ancient principle of the common law that the welfare of the people is the supreme law, as expressed in the Latin

maxim, *"Salus populi est suprema lex."* "The right to al-
ter or amend the laws whenever the public good may re-
quire it" is emphasized by the significant declaration of
Section 24, Declaration of Rights, State Constitution,
that "This enunciation of rights shall not be construed to
impair or deny others retained by the people." Under
these express organic provisions, the lawmaking power
of the people, vested by Article III of the Constitution
in the Legislature, may enact any law "the public good
may require," that is not inevitably in positive conflict
with some controlling provision of the State or Federal
Constitution.

The cited State and Federal decisions sustain this
Act.

WEST, J., concurs.